[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 512 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 514 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 515 
The only question which I propose to consider is, whether a provision authorizing a credit in the discretion of the trustees, upon the sale of the property, avoids the trust as to the complainant, a judgment creditor.
One of the express trusts authorized by statute is, "to sell "lands for the benefit of creditors." Trusts of personal property are tolerated by our law for the same object. The power to create a trust of real or personal property, or, as in this case, of both, must be construed in the light of other provisions of the common law and the statutes of this state. One of these statutes prescribes that every assignment of any interest in lands, goods or things in action, made with intent to hinder, delay or defraud creditors of their lawful suits, damages, debts or demands, shall, as against the persons so hindered, delayed, c. be void. (2 R.S. 137, § 1.) Another, that all assignments of goods, c. in trust for the use of the person making the same, shall be void as against creditors, existing or subsequent, of such persons. (2R.S. 135, § 1.)
These statutes are but expositions of the common law, (2Cowp. 432,) which, in addition, imposes upon the debtor the obligation to pay his debts as they become due. These various provisions of law must stand together, and each should be so interpreted as to preserve the rights of the debtor, without essentially affecting his obligations to his creditors. The legislature have conferred *Page 516 
upon the debtor the right to create a trust of his property for certain purposes. He may also prefer one creditor to another. Of course the "delay" to creditors, necessarily resulting from a fair exercise of these rights, is not prohibited by any statute; but this delay must be incidental and necessary to the existenceof the trust, or the exercise of the power. Where it becomes the principal motive for the creation of the one, or the exercise of the other, the conveyance made and thing done in pursuance of such intent, if any injury does or may thereby result to creditors, is prohibited by statute, and may be avoided at their instance.
Nothing beyond this was determined in Meux v. Howell, (4East, 1,) and in Wilder v. Winne and al. (6 Cowen, 287,) and other cases to which we have been referred. In the first case, Lord Ellenborough said, "the statute was meant to prevent "deeds, c. fraudulent in their concoction, and not merely such "as in their effect, might delay or hinder creditors." And in the last, it was held, that it could not be left to a jury to decide whether an execution was issued upon a bona fide judgment, with an intent to delay other creditors, that such must necessarily have been the intent, the property being insufficient to pay both judgment creditors. Both of these were cases of preference by means of judgments confessed to bona fide creditors, who had issued executions and levied upon the insolvent's property The delay in each case to other creditors, was the necessary result of the preference given, and for that reason lawful.
Indeed, these authorities and others of the same class, are not distinguishable in principle, from a case in which an insolvent, owing debts of an equal amount, to two different creditors, with money sufficient to discharge one only, and no other property, pays one demand in full, and omits the other intentionally. No one would imagine in the instance supposed, that the debtor and the fortunate creditor, one or both, were liable in a penal action for fraud. The payment of one demand, although the debtor happened to owe two, was right in itself, and precisely what the law required. And although the parties may have *Page 517 
foreseen, and intended that other creditors should be delayed, the delay would be the incidental consequence of an act perfectly just and legal. But let us suppose that the debtor owed but one debt, and had transferred his property with intent to hinder and delay that creditor, although but for a day, the assignment, if it could have that effect, would be fraudulent and void. The same would be true of a trust giving preferences, but intended to hinder and delay other creditors. In these cases the motives for creating the trust, and the purpose to be effected by it, would be illegal. The delay, instead of being incidental, would be the primary object to be accomplished by its creation. Such an intent, whether manifested by an open or secret trust, avoids the conveyance. There is no case to the contrary, nor can there be without a repeal of the statute.
It was argued, that an "intent to hinder and delay creditors, "there being no intent to defraud them, will not make an assignment "illegal; a positive intent to defraud must exist." The answer to this suggestion is, that a positive intent to defraud always does exist, where the inducement to the trust, is to hinder, and delay creditors, since the right of a creditor to receive his demand when due, is as absolute, as the right to receive it at all. It has always been understood, that where an individual has incurred an obligation to pay money, the time of payment was an essential part of the contract; that when it arrived the law demanded an immediate appropriation by the debtor, of his property in discharge of his liability, and if he failed, would itself, by its own process, compel a performance of the duty. The debtor, by the creation of a trust, may direct the application of his property, and may devolve the duty of making the appropriation upon a trustee. This the law permits, and such delay as may be necessary for that purpose. But the debtor cannot in this way avoid the obligation of immediate payment, or extend the period of credit, without the assent of the creditor. The attempt to do this, however plausible may be the pretense, is in conscience and in law, a fraud and nothing else. It is the fraud *Page 518 
which we are asked to sanction, by upholding the trust in question.
These insolvent debtors have authorized their trustees, according to their discretion, to sell the assigned propertyupon credit. They are to determine when the purchasers shall pay, and of course, when the creditors shall receive their dividend. Their power amounts to this, as we shall see, if it amounts to any thing. It is hardly necessary to say, that what the debtors could authorize, they could direct to be done; and they could have prescribed the period for the credit in the trust deed. Their power in this respect, upon the principles assumed by the court below, is unlimited, if exercised in good faith. The whole argument, independent of authority in favor of this extraordinary power, resolves itself into this, that without it, the property of the debtor may be sacrificed and creditors thereby injured. To this it may be answered, if the trust property is not readily convertible into money, the debtor may dispose of it himself. He is under no obligation to assign. It was not the object of the legislature, as the late chancellor remarked, "to hold out "inducements to a debtor in failing circumstances, to place his "property beyond the reach of creditors." (7 Paige, 274.) In the second place, if the property is more than sufficient to discharge all the debts of the assignor, he has no right to delay creditors, by giving credit on the sale of the property, with a view to increase the surplus resulting to him; this would be a trust for his ownbenefit, and consequently void, by the first section of the "act against fraudulent conveyances." (7 Paige, 37.) If the property is insufficient to pay the demands of creditors, it is obvious that they are chiefly interested in the amount to be realized by the sale. As they must sustain the loss, if there is a deficiency, they should have the right to be consulted, and to determine whether their interest will be better subserved by a smaller sum presently received, or a larger one, at a future period. The rights of the debtor are sufficiently guarded by the privilege, which the law gives him, of intrusting the sale of his property to trustees of his own selection. That *Page 519 
they will consult his interest, whoever else may suffer, is demontrated by all past experience.
Again, the practice of chancery in reference to receivers, and the law authorizing a credit, by certain statutory trustees, administrators, c. upon the sales of property on account of creditors, have been cited to sustain the views of the respondents. But all these are officers of the law, and not the representatives of the debtor. They are trustees, it is true; but their duties are defined by the court, or written in the statute. Besides, the grant of the power in express terms, in the cases mentioned, is evidence that in the opinion of the legislature, such an authority could not be implied from a mere power to sell, which is the proposition to be established to sustain this assignment.
Neally v. Ambrose, (21 Pick. 185;) and Hopkins v.Ray, (1 Met. 79,) merely determine that the provisions of the particular trusts then before the court, gave to the assignees authority to sell on credit, not that it would be implied from the grant of a power to sell.
In Hopkins v. Ray, the trustees were authorized "to sell "and dispose of the goods in such manner, as they should think "most advisable, within one year." They thought it advisable to sell on credit, and it was held that they could not be made personally responsible, although the trust was void by the law of Massachusetts. The terms of the assignment in the other case, were equally strong. In neither of them was the validity of the trusts themselves in question, and in both, the plaintiffs were attaching creditors, not creditors by judgment.
In Rogers v. De Forest, (7 Paige, 278,) the chancellor observed, "that the express power to sell on credit in that case, "was a power which is usually implied in trusts of that description, "and was not a violation of the revised statutes relative to "uses and trusts." And yet, singularly enough, he remarks in the same opinion, that he was "satisfied it was never the intention "of the legislature, to vest the legal estate in trustees "under the first sub. of the 53d section for any other purpose than "that of an immediate sale for the benefit of the creditors." *Page 520 
The ground, upon which this learned jurist upholds a trust to sell on credit, is, that the securities taken for the property sold, may, by order of the court, be at once converted into cash. This is also the opinion of the superior court, who seem to have adopted the doctrine and reasoning of the chancellor. But if the debtor can legally direct the trustees to give credit on the sale, it is because the law clothes him with a discretion to determine, whether a future payment will, or will not, be advantageous to his creditors. The court of chancery cannot control that discretion, or deprive the creditors of the benefits resulting from its exercise, by compelling the trustees to sacrifice the securities taken from the purchasers, in order to raise money for immediate distribution.
This is true of an assignment like the present, where the assignees are clothed with a discretionary authority by the author of the trust. It is, in each case, a question of power under the statute. If the debtor can create such a trust, equity cannot interpolate a provision, that the fund shall be disposed of, and the money realized, according to the discretion of a chancellor. A debtor, for example, or assignees under his authority, determine, as the late chancellor assumes they rightfully may, that the real estate of the insolvent sold on a credit of two years, will produce fifteen hundred dollars, which, if sold for cash, would yield but one thousand. That fifteen hundred dollars, divided among the creditors at the end of that period, would be more for their advantage than one thousand presently distributed. He frames a trust accordingly. The trust is valid, and yet a court of equity that could not compel the trustees to dispose of the land for cash, can yet deprive the creditors of the advantages of a future payment, by compelling the trustee to sell the bond and mortgage received for the real estate, to a broker for one thousand dollars in cash, for present distribution. Indeed, the reason assigned by the chancellor for upholding the trust, is, in substance, because the court of chancery can annul it at pleasure. I deny that courts possessany such power. If the trust is valid, they are bound to enforce,and not defeat *Page 521 it. That a power of this kind, vested in a debtor, would be most dangerous, the chancellor impliedly admits, in claiming jurisdiction to modify and regulate its exercise. Its liability to abuse is, to my mind, a sufficient reason against implying its existence. The same considerations, which made the legislature require an immediate sale, require an immediate payment also. A discretion may be as judiciously exercised in postponing the time of sale of property as in postponing the time of payment.
In opposition to the authority cited by the respondents, reference may be made to the observations of the chancellor, inHart v. Crane, (7 Paige, 38,) and in Meachem v.Stearnes, (9 Paige, 405,) — to the decision of the supreme court of the second district, in Burdick v. Huntting(a)
and to Barney v. Griffin, (2 Comst. 365.) No member of the court dissented from the opinion of Judge Bronson, upon this point in that case, although no decision was made upon it, because none was necessary to the determination in that suit.
The judgment of the superior court must, therefore, be reversed, and the assignments, containing the provision as tocredit, declared fraudulent and void as to the complainants.
RUGGLES, Ch. J. and JOHNSON, JEWETT, WATSON and WELLES, Js. concurred in the foregoing opinion.
EDMONDS, J. delivered a written opinion to the same effect.
Judgment reversed.
(a) 12 Barb. 168. See post, p. 522. *Page 522