WILLIAM RUHL *v.* JOHN B. PHILLIPS, BENJAMIN S. MANY, *and* THOMPSON LEWIS.

The finding of a referee upon a question of fraudulent intent is not conclusive or final, but may be reviewed on appeal.

A sale of the entire effects of an insolvent copartnership, upon a credit of from twelve to twenty-four months, the necessary effect of which was to postpone the payment of the creditors until the expiration of the term of credit, as well as to make the ultimate discharge of the copartnership debts dependent upon the pecuniary ability of the purchaser to pay the notes given by him as they respectively fell due,—*held*, as having been made with the intent to hinder and delay creditors, and was therefore void.

The hypothecation of a part of the property of an insolvent firm to secure the payment of an individual debt of a partner,—*held*, under the circumstances, sufficient to establish a fraudulent intent.

It makes no difference whether the sale of the whole of the effects of an insolvent copartnership upon credit, or the application of partnership effects to the payment of the individual debt of a partner, is accomplished by the creation of a trust, or by a direct sale to a purchaser. The effect in both cases is the same, to hinder and delay creditors, and what would be fraudulent in one form is equally so in the other.

THIS was an appeal from a judgment entered on the report of a referee.

The action was brought by the plaintiff as a judgment creditor of the defendants Many and Lewis, to have a sale made by them to the defendant Phillips set aside, as having been made with intent to hinder, delay, and defraud creditors. The case was referred to Lewis B. Woodruff, Esq., as sole referee, to hear and determine. He found, as a conclusion of law, " that the said sale and transfer to the said defendant, Phillips, was not void as against the plaintiff, and that the defendants are entitled to judgment in their favor declaring the sale, assignment, and transfer by the said Many on his own behalf, and on behalf of the said Lewis, to the said defendant Phillips, valid and effectual as against the plaintiff."

The plaintiff appealed to the general term. The facts sufficiently appear in the opinion of the court.

*John J. Townsend*, for appellant.

*Marsh, Coe & Wallis*, for respondents.

BY THE COURT.—DALY, F. J.—I think the referee erred in holding, upon the facts found by him, that there was not, in this sale, the fraudulent ingredient of an intent to hinder and delay creditors.

It is insisted that the finding of the referee upon such a question as that of fraudulent intent is like that of a jury, and ought not to be disturbed. But the verdict of a jury upon such a question is not necessarily conclusive or final (*Spies* v. *Boyd*, 1 E. D. Smith, 450; *Randell* v. *Parker*, 3 Sand. S. C. R. 69). "Although this" (the question of fraudulent intent under the statute), said Senator Edwards in *Smith* v. *Acker* (23 Wend. 658), "is a question of fact to be submitted to a jury, I do not consider that their verdict is final and conclusive under all circumstances; should it be contrary to law or evidence, I suppose the court has the same control over their verdict in this as in other cases," and in *Hanford* v. *Artcher* (4 Hill, 271), although President Bradish was of the opinion that the jury alone were to pass upon the question of the weight or sufficiency of the evidence offered to rebut the presumption of fraudulent intent, he conceived that the statute had left the court in the unimpaired possession of its prerogative to pass upon the competency of the testimony to establish the fact. In this case the referee has found certain facts, the correctness of which is not disputed by either party, and the question presented is whether these facts are competent in law to establish, or to warrant, the finding that there was an absence of any fraudulent intent.

In my judgment, they were not, but established directly the contrary, for two reasons: 1. The sale was of the entire effects of an insolvent copartnership upon a credit of from twelve to twenty-four months, the necessary effect of which was to postpone the payment of the creditors until the expiration of the term of credit, as well as to make the ultimate discharge of the copartnership debts dependent upon the pecuniary ability of the purchaser to pay the notes given by him as they respective-.

ly fell due, and was thus an act to hinder and delay creditors; and, 2. Because there was an understanding between the parties, contemporaneously with the sale, that the purchaser was to pay individual debts of one of the copartners, to secure him in doing which, $5,000 of the notes received, upon the sale of the copartnership effects was handed back to him to be appropriated by him, in part, in this way.

The firm of Many & Lewis, who had for many years been carrying on the jewelry business in Broadway, became insolvent. One of the partners—Lewis—was in favor of asking an extension; but the other partner—Many—was apprehensive that the creditors might sue, and that their property would be sacrificed by forced sales under judgments. One creditor threatened to sue; and Many, being satisfied that they could not continue in business by reason of their insolvency, applied to a person to accept an assignment of the property, in trust for the benefit of creditors, but he declined. And finding that the statute required that the assignee should give security for the faithful performance of his duties, they made no further effort to obtain one.

The defendant Phillips was the brother-in-law of Many. The firm were indebted to him in the sum of $3,000, and, in addition, he was liable as indorser upon their notes to the extent of $1,500. He was a stevedore, doing business in South street; was interested in the shipping business; had also purchased the interest of a person in a jewelry store in the Bowery about a year before, of which he had the supervision; and was worth, according to his own estimate, $18,000, over and above his debts or liabilities.

Many obtained a power of attorney from his partner Lewis, authorizing him to make an assignment for the benefit of creditors, or to sell and dispose of the partnership effects; and with the design of selling the property for a sum sufficient to cover debts which he wished to secure, he made a computation of the amount of their debts, among which, it would seem, were debts due by him individually, and finding that they amounted to $21,000, he concluded that he would sell the property to Phillips for that sum, and did so; Phillips

giving his note for $18,000, the $3,000 due to him being allowed upon the purchase; the earliest of which notes were not payable until a year afterwards, and the last not until the expiration of two years. By this means he put it out of the power of the copartners to have any of the copartnership property, or the fruits of it, applied in the payment of copartnership debts until the expiration of a year.

He then gave Phillips $5,000 of the notes to secure him against his indorsement, and for certain payments which Phillips was to make, which included an incumbrance in the form of a levy upon the goods in the store for taxes, the redemption of goods that had been pledged, which were included in the sale, money due to the employees, an outstanding bill for gas, and private debts of Many amounting to $214, and a note of the firm which Many had given for his individual debt. The remaining $13,000 of the notes were disposed of by Many as follows: One for $3,000 was given by him to the landlord of the store, in payment of rent that was in arrear; and the remaining notes, amounting to $10,000, were given to a firm, of which Many's brother was a partner, in payment of money lent.

When the sale was made to Phillips, he knew that the firm was insolvent. The property sold, at the inventory or cost price, was worth $35,000. And there were book accounts due to the amount of $3,600, making in all $38,600. To a person taking the property, as Phillips did, to dispose of it, and collect the account in the ordinary course of business, it was worth $25,000, or $4,000 more than he gave for it; though it could not have been sold at that time for so large a sum, and under the pressure of a forced sale to satisfy creditors, the referee says, it would not have produced a greater sum than Phillips engaged to pay for it. So that it would seem that he got it upon a credit of from twelve to twenty-four months for what it would have brought upon a forced sale, upon judgments to satisfy creditors.

These facts are not disputed, and they show, in my judgment, that the transaction was fraudulent in law. It is well settled in this State that an assignment for the benefit of

creditors which authorizes the assignees to sell the assigned property upon credit is fraudulent and void, as it operates to the hinderance of creditors who have the right to have the property of their debtor appropriated without delay to the payment of his debts (*Nicholson* v. *Leavitt*, 6 N. Y. 510; *Barney* v. *Griffen*, 2 Id. 365; *Kellogg* v. *Slauson*, 11 Id. 302; *Wilson* v. *Robertson*, 21 Id. 589; *Meacham* v. *Sternes*, 9 Paige, 405). And it is equally well settled that a provision in such an assignment that partnership effects of an insolvent firm may be applied in the payment of an individual debt of a partner, is also a violation of the statute, and furnishes conclusive evidence of a fraudulent intent on the part of the assignors, as the operation of it is not only to hinder or delay the partnership creditors, but to deprive them of their debts (*Wilson* v. *Robertson*, 21 N. Y. 591; *Nicholson* v. *Leavitt*, 6 Id. 510; *Kirby* v. *Schoonmaker*, 3 Barb. Ch. R. 48; *Buchan* v. *Sumner*, 2 Id. 167).

It can make no difference whether the sale of the whole of the effects of an insolvent copartnership upon credit, or the application of partnership effects to the payment of the individual debt of a partner, is accomplished by the creation of a trust, or by a direct sale to a purchaser, as in this instance. The effect in both cases is the same, to hinder and delay creditors, and what would be fraudulent in one form, is equally so in the other.

Justice Paige was of opinion, in *Browning* v. *Hart* (6 Barb. 93), that the single fact of the sale by a debtor who is irretrievably insolvent, and against whom suits are pending, of all his goods upon a credit of one or two years, is conclusive as to the intent to hinder, delay, and defraud creditors, which is substantially the present case. To uphold such a transaction is to allow an insolvent debtor to do, by disposing of his property in this way, what he could not do by an assignment of it in trust for the benefit of creditors, and to get rid of the salutary provisions in the act of 1860, which require in such assignment a statement under oath of all the debtor's property, a full account of all his creditors, and of the consideration of each indebtedness, a bond, with sureties approved by a judge,

from the assignee that he will faithfully discharge the trust and duly account, and under which act he can be compelled to account at the expiration of a year upon the petition of any creditor.

Judgment reversed.