Henderson, J., having presided in the court below, did not sit.

---

## C. J. L. Meyer & Sons Co. *v.* Black *et al.*

(*Supreme Court of New Mexico.* January Term, 1888.)

1. Assignment for Benefit of Creditors—Fraud—Power of Assignee to Sell on Credit.
   In New Mexico, where there is no statute regulating assignments for the benefit of creditors, or directing the manner of administering estates of insolvent debtors, it is made a ground for attachment (Comp. Laws N. M. 1884, § 1923) that the debtor "has fraudulently concealed or disposed of his property * * * so as to defraud, hinder, or delay his creditors." *Held*, that an assignment for the benefit of creditors was not fraudulent and void upon its face because it authorized the assignee to sell for cash or on credit, "as he may think best."

2. Same—Right to Attack Deed for Fraud—General Creditors.
   Under the attachment law of New Mexico a general creditor may in that proceeding attack an assignment of the debtor on the ground of fraud, either actual or constructive, without first reducing his demand to judgment.

3. Same—Attachment—Grounds—Evidence.
   Where the ground of the attachment is that defendant had fraudulently "disposed of his property so as to hinder, delay, and defraud his creditors," an assignment for the benefit of creditors made by defendant prior to suit brought, showing upon its face that by its terms the property had been disposed of, is admissible in evidence to establish that fact; the question of the fraudulent character of the disposition not being necessarily determined by showing the transfer.

4. Same—Intervention—Rights of Assignee.
   In *assumpsit* upon a draft against the acceptor, his assignee under a prior assignment for the benefit of creditors is not a person having an interest "in the matter in litigation," within the meaning of Comp. Laws N. M. 1884, § 1890, and he is not entitled to intervene by petition as provided in section 1892; and this is so although part of the property assigned has been attached in the suit.

5. Same—Effect of Wrongful Intervention.
   Where a party has intervened in *assumpsit* without having any right to do so, the action of the court in admitting or rejecting evidence, or in granting or refusing instructions bearing upon issues raised by such improper intervention, is not ground for assignment of error.

6. Corporations—Foreign—Actions by—Qualifications to do Business—Plea in Abatement.

In *assumpsit* by a foreign corporation, where due organization under the laws of its *habitat* is alleged, failure to file the articles of incorporation with the declaration is not ground for plea in abatement.

7. Negotiable Instruments—Actions—Pleading and Proof—Variance.

The declaration in *assumpsit* upon a bill of exchange alleged an acceptance by B. & Co. The acceptance was "B. & Co., per F." *Held* not a variance.

8. Trial—Instructions.

Where there is no evidence tending to support an instruction, the instruction is properly refused.

Appeal from district court, Grant county; S. F. Wilson, Judge.

*Assumpsit* upon a bill of exchange and attachment by the C. J. L. Meyer & Sons Company, appellees, against Robert Black & Co., appellants.

*Conway & Posey* and *Pickett & Elliott*, for appellants. *A. B. Newcomb*, for appellees.

Brinker, J. On April 28, 1884, plaintiff filed its declaration in *assumpsit*, declaring especially upon an acceptance alleged to have been made by Black & Co., the defendant, and upon the common counts for goods sold and delivered, etc., and also filed an affidavit for an attachment charging defendant with having fraudulently concealed and disposed of his property and effects so as to hinder, delay, and defraud his creditors, and with having attempted fraudulently to convey and assign, conceal and dispose of his property so as to hinder, delay, and defraud his creditors. Plaintiff also filed a bond as required by law, and caused a writ of attachment to be issued, which was served upon defendant, and levied upon certain mining property mentioned in the return. On July 28th defendant appeared and filed a plea in abatement to the writ and declaration, alleging as a ground of abatement that plaintiff had not filed its articles of incorporation. On the next day, defendant filed a traverse of the affidavit for attachment. August 1st, plaintiff filed a demurrer to the plea in abatement, which was sustained, and defendant excepted. On August 5th defendant filed what is stated in the record to be a plea in bar to the action, alleging that the contract for the goods furnished defendant by plaintiff, and for which the draft sued upon was given, was made in Grant county, New Mexico, and that the goods were shipped from Chicago, by plaintiff to defendant, under and by virtue of said contract, and that plaintiff is a foreign corporation doing business in this territory without filing its articles of incorporation. December 1st plaintiff filed a replication to this plea, denying specifically all its averments, and defendant added a *similiter*. On the twelfth of December Henry Fenton filed a petition of intervention, claiming the property attached as assignee under a deed of assignment made by defendant to him on the twenty-ninth of December, 1883, conveying to him all the property of defendant, in trust for the benefit of defendant's creditors, and filed with his petition a copy of the deed of assignment and schedule attached to it. On the sixteenth of that month defendant filed a plea of *non-assumpsit* to the declaration, to which plaintiff added a *similiter*, and on the next day plaintiff filed an answer to the petition of intervention, alleging that the deed of assignment set up in the petition was fraudulent and void upon its face because defendant was a married man, and the deed was not signed by defendant's wife, and because said deed was, and was intended to be and is, a fraud upon the creditors of defendant, and especially a fraud upon plaintiff, and was made by defendant and Fenton for the purpose of hindering, delaying, and defrauding the creditors of defendant, and especially the plaintiff. The day after, Fenton filed a demurrer to this answer upon the grounds that the answer does not show upon its face that plaintiff is a judgment creditor of defendant; that the law does not require the wife of defendant to be made a party to the deed of assignment; that it is not competent for plaintiff to attack the assignment for fraud, or otherwise, in an action at law. This demurrer was heard and overruled, and Fenton excepted. On December 24th Fenton filed a replication to the

answer of plaintiff to the petition. Upon the issues thus made the cause was tried before a jury.

During the progress of the trial, plaintiff offered in evidence a draft drawn by plaintiff upon Black & Co., the defendant, with the words, "Accepted. BLACK & Co., per H. Fenton," written across its face. Defendant objected to its introduction in evidence because it was not the draft described in the declaration, and that the acceptance on it was not described in the declaration. as it was really made. The objection was overruled, and defendant excepted. Plaintiff offered in evidence the deed of assignment from defendant to Fenton, for the purpose, as the record says, of attacking it on the ground of fraud. Defendant and Fenton objected to its introduction for such purpose for the reasons: That plaintiff was a contract creditor at large, and not a judgment creditor of defendant, and had no right to attack as fraudulent the deed of trust or assignment, until it had established its debt by the judgment of a court of competent jurisdiction; that plaintiff could not attack the assignment in an attachment case on the ground of fraud, but must resort to a court of equity. These objections were overruled, exceptions saved and the deed of assignment read in evidence.

This deed of assignment, among other things, contained the following, after the words of conveyance: "But in trust and confidence, nevertheless, that is to say, to take possession of all said property, to sell and dispose of the same, using reasonable discretion as to the times and mode of selling and disposing of said property, as he, the said party of the second part, may think best, selling for cash or on a credit, at public auction or by private contract; and to collect all choses in action, of whatever nature and description, belonging to the said party of the first part, and to dispose of the proceeds of all of said property as follows;" directs the payment of the expenses of executing the trust, then the payment of all his creditors *pro rata*, and the surplus, if any, to be delivered to the assignor. The defendant and Fenton then offered to prove that the assignee did not know that the deed of assignment contained a clause authorizing sales upon credit, until the case was called for trial; that the assignee had never sold goods on a credit of more than 30 days' time, and such sales were only made to creditors; that all but three of the creditors of defendant had accepted the terms of the assignment, and that plaintiff was one of the three who had not accepted; that at the time of the assignment the defendant was a general contractor in Silver City, and was carrying on the lumber business, and at that time there was a large quantity of lumber and other material on hand, and that if such lumber and material had been put up at forced sale for cash it would not have brought 25 cents on the dollar of its value; that the assignee had already declared and paid to the creditors a dividend of 25 per cent. on the dollar, and that within a very short time another dividend of 25 per cent. would have been declared and paid; that the assignee has discharged his duties as such faithfully, honestly, and diligently, for the interest of all the creditors, and to the entire satisfaction of all of them, except the three heretofore mentioned, and that it is to the interest of the creditors that the business pertaining to the assignment should be conducted as the assignee conducted it; that of the two creditors besides plaintiff who have not accepted the terms of the assignment, one of them has a suit now pending to enforce a lien against the trust property in Silver City, and that the property belongs to another party than the one against whom the lien is had, and that the other is a small creditor whose claim does not amount to more than $200; that the assignee had been very diligent in making attempts and efforts to sell the real estate assigned, excepting such as was seized by attachment in this suit; that he had written to various parties urging them to buy, but had received no bids; that when the assignment was made both of the banking houses in Silver City had suspended payment, the proprietors became insolvent, and the result was that property in that town depreciated at least 50 per cent. in value, and that to have sold the trust property

then for cash would have caused a ruinous sacrifice, and would have been greatly against the interest of the creditors. Plaintiff objected to this evidence, for the reason that the validity and legal effect of the deed of assignment was purely a question of law for the court to decide from the face of the instrument of assignment itself, and that evidence *aliunde* could not be introduced to change, alter, or modify the terms of the deed of assignment, and that the evidence offered was irrelevant, incompetent, and immaterial. The court sustained the objections, and excluded the evidence, and defendant and Fenton duly excepted. Defendant and Fenton then offered to prove that at the time the assignment was made there was no fraud intended by the assignor, and that, as a matter of fact, he committed no fraud, and asked that the jury be allowed to pass on that question. To this proof plaintiff objected. The court sustained the objection, and excluded the proof, to which an exception was taken.

Plaintiff asked the following instructions: "(1) The jury are instructed that if they find from the evidence in the case that the defendant Robert Black was indebted to the plaintiff in this case, at the commencement of this suit, in the sum of $2,956.30, as claimed by the plaintiff, and that the same has not been paid, in whole or in part, and there is now due to the plaintiff from the defendant Black, as interest upon the amount of plaintiff's claim, the sum of $150.56 at the present time, they will return a verdict in favor of the plaintiff upon the issue as to the amount due to the plaintiff in this case, for the amount stated above as principal and interest, respectively. (2) The court instructs the jury that the deed of trust or assignment in this case, executed by the defendant Robert Black to Henry Fenton, the intervenor in this case, in and by which the said Black attempted to convey, or did convey, all of his property in trust for the alleged benefit of his creditors, to the said Fenton as trustee or assignee, by express terms empowers the said Fenton, as trustee or assignee, to sell the assigned property upon credit, and gives the said assignee discretionary power as to the time and manner of selling said assigned property, and is therefore fraudulent in law and void upon its face; and, as a matter of law, said deed of trust or assignment is conclusive evidence that the assignor, the defendant Black, in this case, fraudulently disposed of his property and effects, so as to hinder and delay his creditors; and the jury are instructed to find the attachment issue and the issue upon the petition of intervention in this case in favor of the plaintiff in this suit." These instructions were given.

The defendant and Fenton asked the court to instruct the jury as follows: "(1) That the deed of assignment from Robert Black to Henry Fenton is not, and was not at the time of its execution, fraudulent in law, and unless the jury find from the evidence that said deed was, at the time of its execution, and is now, fraudulent in fact, and that the defendant Black made the same for the purpose of hindering, delaying, and defrauding his creditors, they must find for the defendants and intervenor in the attachment proceedings. (2) The jury is instructed that before the plaintiff (it being a foreign corporation) can do business in this territory it must comply with the laws of the territory governing foreign corporations; and the plaintiff having failed to prove that it has complied with the laws of the territory governing foreign corporations, it is not entitled to recover in the action, and the jury must find for the defendant in both issues before them. (3) If the jury find from the evidence that the plaintiff has attached property in the hands of the assignee, Fenton, by virtue of a general assignment made by defendant Robert Black of all his property to said Fenton, for the benefit of all his (Black's) creditors, they will find for defendant and intervenor in the attachment proceedings in this case, notwithstanding said assignment is or be fraudulent in law, which counsel for defendant and intervenor do not admit." The court refused to so instruct.

v.4 N. M.—13

The court then, of its own motion, instructed the jury that under the evidence the plaintiff was entitled to a verdict upon the issues raised upon the affidavit for the attachment against defendant and intervenor, and that they should so find. To the giving and refusing of the foregoing instructions exceptions were taken. There was a verdict and judgment for plaintiff upon all the issues. A motion for a new trial was filed and denied, and defendant and Fenton, the assignee, bring the case here by appeal.

To reverse the judgment there are eight errors assigned, based upon and fully covering the points raised and determined during the progress of the trial. Counsel for appellants have grouped the several errors complained of into seven propositions, the most important of which will be considered in the order presented. But, before entering upon an examination of those questions, it seems proper to notice the rulings of the court made earlier in the progress of the cause. Appellant Black complains of the action of the court in sustaining plaintiff's demurrer to his plea in abatement. This demurrer was properly sustained. The declaration alleged that plaintiff was a corporation duly organized under the laws of Illinois. This was a traversible averment of fact which could only be reached by a proper plea. The fact being properly averred, the articles of incorporation would be merely evidence to establish that fact. They would not be a part of the declaration, even if they had been filed with it, and the failure to file them would not constitute a ground of abatement. It will be observed that defendant filed a traverse of the affidavit for the attachment, thus raising the issue whether the grounds of the attachment were true. Before this issue was determined, he filed a plea to the merits. No advantage was taken of this below, and no point is made upon it here; therefore it is not necessary to the determination of this case to decide whether this proceeding was regular or not, and no opinion is expressed upon it. I notice it here because if passed without being referred to it might be inferred that this court considered the practice adopted in that particular, proper.

The issue made by the plea of August 5th, and the replication thereto, seems to have been abandoned on the trial. The plea contained new matter affirmatively stated, and was denied in the reply; but defendant offered no evidence to sustain the issue thus presented. It is true that defendant's second instruction was intended to present this question to the jury, but as there was no evidence introduced upon which to base the instruction, it was a mere abstraction and was properly refused. A large part of the record is taken up with the petition of intervention of Henry Fenton, and the proceedings thereon. This petition was improperly filed, and should have been stricken out, but its presence has done no other harm than to cumber the record. It presented an immaterial issue,—one that could not be determined in this proceeding,—and its retention on the record and consideration by the court ought not to be permitted to affect the rights of the proper parties to this cause, if the course otherwise pursued is regular. The court, in permitting this petition to be filed, proceeded upon a mistaken view of the purposes of the statute concerning interventions. Section 1890, Comp. Laws 1884, provides: "Any person who has an interest in the matter in litigation, in the success of either of the parties to the action, or against both, may become a party to an action between other persons, either by joining the plaintiff in claiming what is sought by the declaration, or by uniting with the defendant, in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the cause, and before the trial commences." Section 1892: "The intervention shall be by petition," which must set forth the facts upon which such intervention rests, etc.

A careful examination of this statute will show that the facts stated in the petition of Fenton do not fall within its provisions. The statute declares

that any person who has an interest in "the matter in litigation" may become a party, etc. Now, it is clear that the matter in litigation was the alleged indebtedness from Black & Co. to plaintiff. The facts set forth in the petition of intervention, which must be the facts upon which the intervention rests, do not show any interest that Fenton may have in the indebtedness alleged in the declaration to be due plaintiff from defendant, nor that he would in any way be affected by the judgment which might be rendered, but, on the contrary, they show an utter absence of interest therein. The only facts disclosed by the petition are, in brief, that defendant is indebted to various persons, (whether to plaintiff or not does not appear,) and to provide for the payment of these debts defendant has assigned all his property to Fenton, and this property, or a part of it, Fenton claims as such assignee. It is true that a portion of this property has been attached by plaintiff, but that fact does not make the property or its ownership one of the essential questions to be determined in the litigation between plaintiff and defendant. Whether the property belongs to defendant or to Fenton, as assignee, would, if determined, shed no light upon the fact distinctly alleged by plaintiff in his declaration, and as distinctly denied by defendant in his plea, namely, that defendant was indebted to plaintiff. Suppose this was a simple suit in *assumpsit:* with the issues thus made, and without the aid of the attachment, would the judgment, whether for plaintiff or defendant, affect in the remotest degree Henry Fenton or his title to the property embraced in the deed of assignment? If plaintiff should recover judgment in the case supposed, and cause execution to issue and be levied upon the property claimed by Fenton in the deed of trust, would Fenton be included or in any manner affected by the judgment? Could he not then, as well as now, if the deed be valid, assert his right to the property successfully? It seems to me that the answer to these questions is obvious. In many jurisdictions the legislatures have provided for the trial of the right of property attached in this class of cases, in the case in which the attachment issues, but no such provision has been made in this territory, and we are not authorized to extend to this case, by construction, a statute intended for an entirely different one.

The regularity of this proceeding was not made the object of direct attack in the district court, and I should not have discussed the question had it not seemed necessary in determining several exceptions that were taken to the action of the court in excluding evidence offered under the issues presented by the intervention. The intervention and proceedings thereon, as we have seen, being entirely irregular, and the issues presented being immaterial, it follows that the evidence offered in support of those issues was incompetent and was properly excluded. For the same reason the action of the court in refusing the instructions applicable to that issue was not error. Defendant complains of the ruling of the court in admitting in evidence the deed of assignment. The record shows that the purpose of its introduction was to attack it for fraud. Whatever the purpose stated may have been, if it was admissible for any purpose, it was properly read to the jury. The ground of the attachment was that defendant had fraudulently disposed of his property so as to hinder, delay, and defraud his creditors. The deed shows upon its face that by its terms defendant had disposed of his property, and it was certainly admissible to show that fact. *Leitensdorfer* v. *Webb,* 20 How. 176. Whether such disposition was fraudulent or not is not necessarily determined by showing the transfer. The question of fraud would subsequently arise, either by a request to the court to declare such disposition fraudulent from an inspection of the deed, or by evidence offered to show that there was fraud in fact entering into its execution.

It is further contended that the court should have sustained defendant's objection to the accepted bill of exchange offered in evidence by plaintiff, because, it is said, there was a variance between the one declared on and the

one offered. This was the sole ground of objection. The declaration alleges that plaintiff made its bill of exchange directed to the defendant, which the defendant afterwards, upon sight, accepted, according to the usage and custom of merchants. The bill of exchange offered in evidence was in exact conformity to the one described in the declaration with the exception that it was indorsed "Accepted. BLACK & CO. per H. FENTON." Chitty lays down the rule that a contract or other writing must be pleaded according to its legal effect, and says, if a bill of exchange be declared on as accepted by A., and the one offered in evidence is accepted by A., by his agent, it will sustain the averment, and there will be no variance. 1 Chit. Pl. 311. *Mack* v. *Spencer*, 4 Wend. 411. This is the general rule. Now if it had been objected that the acceptance of H. Fenton for Black & Co. was not the act of Black & Co., the court would have undoubtedly sustained the objection, and required plaintiff to prove Fenton's authority to act for Black & Co.; but no such objection was made, and it may be assumed that there was no ground for it.

The main points relied upon by appellants for a reversal are: That a general creditor whose demand has not been reduced to a judgment cannot attack a conveyance on the ground of fraud, either actual or constructive; and, second, that the provision in the deed of assignment authorizing the assignee to sell on credit does not render the deed void as to creditors, and that the court erred in so instructing the jury. A large number of authorities have been cited to sustain these two propositions. The authorities under the first, so far as I have had time to examine them, have no application as the law stands in this territory. They are cases arising under the general jurisdiction of courts of equity exercised independent of and in the absence of any statute upon the subject. The doctrine they announce is familiar. Notwithstanding the general rule of equity as applied to creditors' bills, I apprehend that it will not be denied that it is competent for the legislature to prescribe a mode of proceeding at law for the ascertainment and enforcement of rights which have heretofore belonged to the exclusive domain of equity, and in the class of cases under review our legislature has certainly done so.

Section 1923, *c.* 8, Comp. Laws, provides that "creditors whose demands amount to $100 or more may sue their debtors in the district court, by attachment, in the following cases, to-wit: * * * *Third.* When the debtor is about to remove his property or effects out of this territory, or has fraudulently concealed or disposed of his property or effects, so as to defraud, hinder, or delay his creditors. *Fourth.* When the debtor is about fraudulently to convey or assign, conceal or dispose of his property or effects, so as to hinder, delay, or defraud his creditors." The first ground of the attachment affidavit is copied literally from the second clause of the third subdivision of this section. The second ground stated in the affidavit was evidently intended to rest upon the fourth subdivision; but this it fails to do. The statute says: "About fraudulently to convey," etc., meaning clearly that there must be present in the mind of the debtor a purpose to convey which he is on the verge of executing; but the affidavit says: "Said Robert Black has attempted fraudulently to convey," etc. This does not state a present purpose to do something which is likely to be accomplished at any moment, and which the law forbids; but it relates to a past transaction which, from all that appears in this part of the affidavit, may have been absolutely abandoned, and heartily repented of.

I have deemed it necessary to thus criticize this part of the affidavit for fear it might be inferred, if passed over in silence, that the language used was a sufficient compliance with the statute. The other sections of this chapter provide a full and complete system of procedure for the commencement, prosecution, and determination of suits by attachment based upon any one of the grounds mentioned in the section above quoted. This system is as adequate to the end in view, and as direct in its method of proceeding, and as efficacious in its results, as the most ample jurisdiction exercised by courts of

equity. If this be true, why should a creditor be forced to resort to the tedious and circuitous processes of both law and equity in order to obtain satisfaction of his debt? I am inclined to think that, with this ample remedy provided for him at law, equity would, under a familiar rule, decline jurisdiction, if he should ask its interposition. The statute says he may sue in this form if the defendant has fraudulently disposed of his property so as to defraud, hinder, or delay his creditors. This certainly contemplates any kind of fraudulent disposition, whether by deed or otherwise, whether to an assignee, ostensibly for the benefit of creditors, or to any other voluntary or fraudulent grantee or transferee. The only conditions precedent to the right to sue under this statute are a debt, a disposition by defendant of his property, and a fraud upon his creditors. As has been shown, any form of disposal accompanied by fraud in fact, as an intention to prevent the collection of debts, or by fraud in law, arising from the inevitable tendency of his act to unreasonably hinder and delay such collection, will support the action. That the creditor may adopt and pursue the method of procedure prescribed by this statute is so manifest that I have deemed it unnecessary to cite a large number of cases sustaining this position, and shall only call attention to one— *Leitensdorfer* v. *Webb*, 20 How. 176, 1 N. M. 34.

The last question is one of great difficulty. It arises upon the instruction given to the jury, at the request of plaintiff, that the deed of assignment was fraudulent and void upon its face because of the power it conferred upon the assignee to sell the assigned property on credit. There is no statute in this territory regulating assignments, nor directing the manner of administering estates of insolvent debtors. No case which can be considered as binding authority upon this question has been cited, nor have I been able to find one. The decisions of the various states are so conflicting that it has been found impossible to extract from them a uniform rule, and unless their value as authority is estimated by the number of decisions on each side, it is very difficult to determine where the weight of authority is. Courts of equal eminence and respectability have held directly opposite views upon this question and have supported their judgments with arguments so persuasive and able that a careful consideration of them leaves the mind in a state of great doubt and uncertainty. In this condition of the adjudged cases, and in the absence of a statute or binding judicial authority, the necessities of the situation compel the adoption of some rule which will best subserve the interests of the public, and protect and guard alike the property rights of both creditor and debtor. In the discussion of this question the whole ground has been covered, so that little more can be done than to carefully weigh and follow the line of reasoning which seems to come nearest the attainment of the end sought. A full statement of the arguments upon this question would, I apprehend, serve no useful purpose, but it may be well to state briefly the positions taken on each side.

In Ohio it is said: "A sale by a trustee upon reasonable time of credit, taking the usual security, is an act of good faith, and is recognized by our laws relating to the settlement of the estates of deceased persons, and is frequently directed by the court. An absolute and inflexible rule that a trustee for the payment of debts must at all times and under all circumstances sell for cash, would not be for the interests of creditors; and, if this be so, a provision in the trust-deed in regard to credit not specifically requiring a credit beyond what a court would sanction in the absence of such provision cannot, in our opinion, be deemed *per se* fraudulent. *Conkling* v. *Conrad*, 6 Ohio St. 620. The court notice the opposite rule, as held in New York, and decline to follow it. In Alabama it is held that the trustee ought to have a reasonable discretion in fixing the terms of the sale, and that he is clothed with such discretion as may benefit the creditors, if discreetly exercised, is not sufficient to authorize the court in declaring the deed fraudulent. *Abercrombie* v. *Brad-*

*ford*, 16 Ala. 560; *Evans* v. *Lamar*, 21 Ala. 333; *England* v. *Reynolds*, 38 Ala. 370.  In Mississippi, Maryland, Virginia, Tennessee, Missouri, Texas, and Indiana the same doctrine obtains, and for substantially the same reasons. Burrill, Assignm. 337.

In New York it is held by a long line of decisions, but after much discussion and conflict of opinion in the earlier cases, that a deed of assignment authorizing sales on credit is void.  In *Barney* v. *Griffin*, 2 N. Y. 365, BRONSON, J., says: "An insolvent debtor cannot, under color of providing for creditors, place his property beyond their reach in the hands of trustees of his own selection, and take away the right of the creditors to have the property converted into money for their own benefit without delay.  They have the right to determine for themselves whether the property shall be sold on credit, and a conveyance which takes away that right, and places it in the hands of the debtor, or in trustees of his own selection, comes within the very words of the statute; it is a conveyance to hinder and delay creditors, and cannot stand."  *Vide*, also, *Nicholson* v. *Leavitt*, 6 N. Y. 510.  This rule has been observed in Vermont, Wisconsin, Minnesota, Michigan, and Illinois. Burrill, Assignm. 336.  This position rests upon strong grounds; and, while there is great force in the argument that the rights of the debtor should be considered carefully, and his property made to bring the greatest amount possible, when a reasonable credit might secure that end, and thus serve the double purpose of giving to the creditor a greater amount, and reducing in the same proportion the debtor's liability, yet it seems, in view of the statute which aims to prevent fraudulent delay to the creditor, that any act by the debtor or his voluntary assignee which causes such delay or which necessarily tends in that direction without the creditor's consent, and which puts the property out of which the creditor has a right to seek satisfaction for his debt beyond the reach of ordinary process, should be declared void, rests upon an apparently equally solid foundation.

In further exposition of this view it may be inquired: If the assignee be invested with the discretion to sell on credit, who shall control the exercise of this discretion or measure its extent?  If he may sell on credit at all, may he not extend that credit to a long as well as a short period of time?  If for 30 days, why not for three months, or a year, or a longer time?  And if for the longest time which he may deem proper, is not the creditor hindered and delayed by this credit?  If, at the time of the sale on credit, the purchaser's means of payment consist of a crop of corn or wheat, or a herd of sheep or cattle, and the market for that class of property is depressed and prices low, what is to prevent the assignee from indulging him until the market improves? And if he may do this, who shall determine when that time arrives?  Again, the creditor, when the debt is created, extends credit to a debtor in whose solvency or honesty he has confidence.  Now, if this debtor may assign and authorize the assignee to sell on credit, the property may pass into the hands of insolvent or dishonest persons in whose solvency or honesty, it is true, the assignee may have full confidence; but suppose the assignee should be mistaken, would not the creditor be prejudiced by the unfortunate mistake of the assignee?  And if the assignee may sell on credit to one person, he may extend credit to any number of persons; and if he should do so to a great number, the resource of the creditor, instead of being confined to one person,—the original debtor,—would be scattered throughout the entire community, and, instead of his risk of loss being limited to one debtor, it would be increased to the number of persons whom the assignee might consider worthy of the exercise of his discretion.  This would almost inevitably result in great delay, and, without the concurrence of the most fortunate chain of circumstances, result in almost certain loss.

This is the strongest aspect of the case against the deed, and is based upon the presumption that the assignee would avail himself of the discretion con-

ferred, and extend it against the interest of creditors to the utmost limit allowed by the language of the deed. But can this presumption be indulged? Is there any rule which would justify it in preference to the presumption that when two ways are open to him he will choose the one leading to the benefit, rather than the one leading to the damage, of the creditor? Is this presumption consonant with well-settled rules by which courts arrive at the probable conduct of persons in advance? Simply because a power is conferred, the exercise of which in a particular direction is not absolutely necessary to the performance of a duty imposed by the ·same instrument, is it to be assumed that the power will be exercised in such manner as to make the performance of the duty impossible, and thus perpetrate a fraud? A leading authority answers these queries in the following terse language: "The law in no case presumes fraud. The presumption is always in favor of innocence, and not of guilt. In no doubtful matter does the court lean to the conclusion of fraud. Fraud is not to be assumed on doubtful evidence. The facts constituting fraud must be clearly and conclusively established. Circumstances of mere suspicion will not warrant the conclusion of fraud. If the case made out is consistent with fair dealing and honesty, a charge of fraud fails." Kerr, Fraud & M. 384.

This deed imposes a duty upon the assignee to sell the assigned property, and pay out the proceeds ratably among all the creditors of the assignor, and to enable him fully, under all circumstances, to perform this duty, he is invested with a discretion to sell on credit or for cash, "as he may think best." Under the rules quoted from Kerr, is the court justified in presuming that he will act in bad faith with the beneficiaries of the trust he has assumed? Clearly not. But the court will presume that he will act honestly in the discharge of ·his duty. The most that can be said is that it is doubtful whether the assignee will act for the best interest of the creditors or not, and in such case the fraud is not established. The deed is the evidence to establish what he may do. Upon this evidence arises the doubt; then fraud will not be assumed from the deed. If the rule laid down by Kerr gives a proper premise, this conclusion seems inevitable. Fraud in fact is well understood. There is no pretense that there is any such fraud in this case. But the contention of plaintiff is that there is fraud in law, and on that theory the court directed a verdict.

What constitutes fraud in law is hard to determine from the decisions. In many of the cases it is said that if it appear from the face of the deed that the creditor is hindered or delayed, or if the deed tends to hinder and delay, this is fraud in law. This is not a very accurate definition. If it had been stated thus: "If the deed necessarily hinders and delays the creditors, or inevitably tends to do so, for an unreasonable time, and this is the only fair inference to be drawn from it, it is fraudulent," the definition would be more in consonance with the letter and spirit of the statute. "Acts contrary to public policy, to sound morals, to the provisions of a statute, etc., however honest the intention with which they may have been performed, are deemed constructive frauds, or frauds in law, and are absolutely void." *Vide Leitensdorfer* v. *Webb*, 1 N. M. 54. In this case the assignment was contrary to the provision of law requiring certain things to be done to make a valid deed, and the doctrine was applied. It was afterwards affirmed in the supreme court of the United States. 20 How. 176. The opinion, like nearly all others, merely stated the result of the reasoning which induced the conclusion. If the argument of the court had been carried out to its logical conclusion it would have been that the law required certain things to be done in order to make a valid deed of assignment, and, if done, the property could lawfully be delivered to the assignee; but if those things were not done, then there was no deed at all, and the delivery of the property was as voluntary as if no attempt had been made to execute a deed, and was therefore contrary to law, and a fraud upon creditors. But to

hold a deed like this, where all the legal requirements have been met, and where the transfer may or may not unreasonably delay creditors, fraudulent, would, it seems to me, subject the judgment to the quaint censure of Judge WATTS in his dissenting opinion in *Leitensdorfer* v. *Webb, supra.* He says: "To say that inconclusive *indicia* of fraud constitute a fraud in law is drawing certain conclusions from uncertain premises, which is just as inadmissible in law as in logic." 1 N. M. 62. This idea may be applied to this case in this way: To say that because the assignee has the discretion to sell on credit, and he may or not exercise such discretion by selling on credit, therefore he will sell on credit and defraud creditors; that the court should pursue this line of reasoning from the premises furnished by the recital in the deed, and arrive at the illogical conclusion embodied in the instruction complained of. I am persuaded this ought not to be done.

The reasoning in those cases which hold deeds of the kind under consideration void when such deeds lack no legal formality or requirement, arrives at that conclusion by holding that delay to the creditor is fraudulent. They say, as in New York, the creditor has the right to have the debtor's property converted to money immediately and without delay. If delay was the only element of fraud this might be true. But it is well known, and many cases can be found which recognize the fact, that in every assignment there is necessarily more or less delay, and yet such assignments have been sustained. If this were not so, it would be impossible to make a valid assignment, and creditors of failing debtors, however honest such debtors might be, and however desirous they might be to divide their property equitably among their creditors, would be put to a race of diligence, and the first to sue the embarrassed, but honest, debtor would be the most fortunate. But I think that the statute ought not to receive this construction. If any assignment which delays creditors for never so short a time is necessarily fraudulent, why use the words "fraudulent" and "delay?" Would not the word "delay" alone express the meaning of the legislature? The statute says "or has fraudulently disposed of his property so as to defraud, hinder, or delay his creditors." Section 1923, *supra.* The word "fraudulently" qualifies and limits the words "disposed of his property so as to defraud, hinder, and delay." If not, then it may be rejected as surplusage, and this we are prohibited from doing by a well-settled rule of interpretation. Sedg. St. & Const. Law, 199–220. If we construe "disposal and delay" as synonymous with "fraudulent disposal so as to delay," we would be ignoring this fundamental rule, and would be forced to this false and unnatural syllogism: To authorize an attachment there must be a fraudulent disposal of property, and delay of creditors. The deed disposes of property and delays creditors, (but without fraud in law or in fact;) therefore the deed is fraudulent. In the language of Watts, this is "as inadmissible in law as in logic."

From what has been said I cannot escape the conclusion that the deed of assignment was not fraudulent, and that the instruction complained of was erroneous. But if the deed had directed credit to be given on sales, whether for a specified time or not, a very different question would be presented, and might lead to a different result. This question is a new one in this territory, and as it became necessary to settle the rule of construction of the instrument, and as the adjudications were so variant that no satisfactory rule could be deduced from them, I have deemed it necessary to examine the question very minutely, and more at length than I otherwise would.

The judgment should be reversed, and the cause remanded; **and it is so ordered.**

We concur: LONG, C. J.; HENDERSON, J.; REEVES, J.