### WARNER *v.* LAKE, Sheriff.

*(Supreme Court, General Term, Fifth Department. March, 1891.)*

FRAUDULENT CONVEYANCES—INTENT TO DELAY CREDITORS.

A debtor executed to one W., his father, a bill of sale of all his property, valued at $9,500, taking notes for the entire price, which were to run for periods of from two months to three years from their date. Two months afterwards W. made a general assignment for the benefit of creditors. The property assigned consisted only of what W. received under the bill of sale, a judgment for $274, and a house and lot valued at $1,600, and subject to a mortgage of $800. The debtor testified that

he gave the bill of sale to W. in order that W. might take the property and pay his (the debtor's) debts. *Held,* that the bill of sale was made with the intent to hinder, delay, or defraud the debtor's creditors of their lawful suits, demands, etc., within the meaning of 2 Rev. St. N. Y. p. 137, § 2, and was void.

Appeal from circuit court, Chautauqua county.

Action by William H. Warner against Clarence H. Lake. From a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial on a case and exceptions, defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER, J.

*A. Moot,* for appellant.   *M. Shire,* for respondent.

DWIGHT, P. J.   The action was for the alleged wrongful conversion of a stock of goods claimed by the plaintiff, as assignee for the benefit of creditors of one Benjamin F. Williams.   The goods were seized and sold by the defendant as sheriff of Chautauqua county, by virtue of executions in favor of the judgment creditors of one Charles F. Williams, and as the property of the latter.   The final question, of fact and law, was whether, at the time of the levy and sale, the goods in question were the property of the plaintiff as such assignee, or of Charles F. Williams, the judgment debtor.   On the 9th day of November, 1887, the goods were the property of Charles F. Williams, and were in his possession as the stock in trade of his business as a country merchant at Hamlet, in Chautauqua county.   He was at that time largely indebted; his notes had gone and were going to protest; his creditors were pressing him for payment; and he was unable to pay his debts as they became due.   On the day mentioned he made a bill of sale to his father, Benjamin F. Williams, of the entire stock of goods and fixtures of his business, valued in the bill of sale at $6,500, and of his book-accounts, estimated at $3,000. The bill of sale recited that notes were to be given for the entire purchase price, and specified the several amounts and days of payment of such notes, —19 in number,—which were to run for periods of from 2 months to 3 years from their date, and it purported to give immediate possession of the property to the vendee.   The next day after this transaction Charles F. Williams took all the property he had left, consisting of $275 in money, and went to the state of Georgia, where he has remained ever since.   Two months after the transaction Benjamin F. Williams made the general assignment for the benefit of creditors to the plaintiff, under which the latter claims title to the stock of goods in question, in trust to pay the debts of his assignor, including the notes for $9,500 given by the latter to Charles F. Williams for the goods themselves.   The inventory of assets, verified by the assignor, shows no other property than what remained of the same stock of goods and accounts, after the sales and collections of two months, $18 in money, and a house and lot in Buffalo valued in the schedule at $1,600, and incumbered by a mortgage of $800 and a judgment of $274.   Many other facts and circumstances, of more or less significance as badges of fraud, are in evidence; but we regard their production as a work of supererogation, in view of the facts established without contradiction, and by evidence introduced by the plaintiff, in respect to the real character of the transaction between the debtor Charles F. Williams and the plaintiff's assignor, which is evidenced, in part, by the bill of sale. The testimony of Charles F. Williams was taken in the state of Georgia on an open commission issued to that state on the application of the plaintiff, and he was examined orally by counsel representing both parties.   He testified, in answer to a question by counsel for the defendant: "My father, in consideration of my transfer to him, agreed to accept these goods in trust for the payment of my debts; if you want to call it 'trustee,' that was the purpose for which I transferred the goods to him."   This statement he modified by the succeeding answer to the counsel for the plaintiff: "My father had a title to the goods at the time.   I gave him a title to the goods then and there.

I sold him the goods for the express purpose of paying my debts." *By Mr. Moot:* "* * * I did not make him a trustee." *By Mr. Shire:* "He was to pay my debts with this property." *By Mr. Moot:* "I think, perhaps, it might have been three weeks before I sold out that I had the first conversation with my father. * * * I can't tell all that was then said. The substance was that I wanted he should take the goods and pay the debts, and he said if it would be all right he would do it. * * * There was more or less talk for a couple of days before the bill of sale was made. The bill of sale was made the day he took possession, about November 7th, 8th, or 9th. He remarked that, if I should leave it to him, he would do the best he could; this was the substance of what he said." These statements were, in effect, reiterated by the witness, several times, in the course of his testimony, with the addition that, after the debts were paid, the balance of the notes were to be paid in cash to him, and that debts were to be paid in the order in which they fell due.

This testimony, of itself, we think discloses a transaction which was in direct contravention of the statute of frauds. That statute declares that every assignment of any interest in goods or things in action, made with the intent to hinder, delay, or defraud creditors of their lawful suits, damages, debts, or demands, as against the persons so hindered, delayed, etc., shall be void. 2 Rev. St. p. 137, § 1. This statute applies equally to assignments in trust and to absolute sales and transfers of property; equally to the case of an actual intent to defraud the creditor of his just dues, and to the case where such intent is absent, but the necessary effect of the sale or transfer is to postpone the creditor even for one day in the enforcement of his demand. *Nicholson* v. *Leavitt,* 6 N. Y. 510; *Brigham* v. *Tillinghast,* 13 N. Y. 215; *McConnell* v. *Sherwood,* 84 N. Y. 522. For the words of the statute which characterize the intent which renders the transfer void are in the alternative; and an intent to hinder or delay is as fatal as the intent to defraud, and the law presumes that the grantor intends the result which must necessarily follow his act. That the necessary result of the transfer in this case, whether considered as a trust or as an absolute sale, if it were upheld, would be to hinder and delay the creditors of the vendor in the legal enforcement of their demands against him, is apparent. If effect were to be given to the arrangement described in his testimony, creditors must wait the process of disposing of the goods, and collecting the accounts transferred; and even then must be content to receive satisfaction of their demands in the order in which those demands fell due. This is not in accordance with the rights of creditors. They are not to be compelled to wait till their debtor can pay in cash. They are entitled to the benefit of their "lawful suits" for the enforcement of their demands against his property, and that, not in the order in which their demands fall due, but according to their vigilance in instituting such lawful suits and obtaining the process of the courts for their satisfaction or security. Moreover, even if it were possible for the creditors to enforce performance of the agreement of the transferee of this property for the payment of their claims, the terms of credit given to him for the payment of his notes must necessarily result in delay varying from two months to possibly three years before payment could be enforced. But it seems unnecessary to argue or illustrate further the proposition that the transfer by the debtor, in this case, of his entire property, except the small sum which he retained for his own use, upon the agreement disclosed by his own testimony, was within the letter and spirit of the statute in fraud of the rights of his creditors. We think there was no question for the jury in this case, and that the court erred in denying the defendant's motion for a nonsuit, and for the direction of a verdict in his favor. The judgment and order appealed from must be reversed, and a new trial granted, with costs to abide the event. So ordered.