(3 App. Div. 277.)

### HOWARD v. LEONARD et al.

(Supreme Court, Appellate Division, Second Department. April 7, 1896.)

1. TRUST FUND—LIABILITY FOR BENEFICIARY'S DEBTS.
   Under 4 Rev. St. (8th Ed.) p. 2438, § 57, providing that where a trust is created to receive the rents and profits of lands, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum necessary for the education and support of the beneficiary, shall be liable in equity to the claims of his creditors, etc., it is not essential that a surplus shall have accumulated in the hands of the trustee before the creditor can maintain his action.

2. SAME—NECESSARY EXPENSES.
  In determining the amount of income necessary under such statute for the support of the beneficiary, regard must be had to the station in life, the social standing, and the accustomed manner of living of the party, both before and since the income was provided.

3. SAME.
  A beneficiary under such trust cannot be allowed to support and furnish spending money to a healthy, able-bodied husband, at the expense of her creditors.

Appeal from judgment on report of referee.

Action, in the nature of a creditors' bill, by Margaret A. Howard, as surviving partner, against Elizabeth De Witt Leonard and others, to reach surplus income of defendant Leonard. From a judgment for plaintiff, entered on the report of a referee, defendants appeal. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Edward B. Hill, for appellant Leonard.

Owen, Gray & Sturges, for appellant Robinson.

Amasa A. Redfield, for respondent.

HATCH, J. The defendant Leonard is a daughter of Jeremiah P. Robinson, who died leaving a large estate. By the terms of his will, so far as essential to any question arising in this case, the devise to his daughter was in trust as follows:

"Her share shall be held and kept invested for the life of my said daughter, by my executors, or the survivor or survivors of them, and the net interest and income thereof shall, as it accrues, be paid to her, or applied to her use so long as she shall live."

The will also devised to his wife, Elizabeth Robinson, certain personal property and one-fourth of his estate. His wife has since died, leaving a will, which, so far as affects any interests here, makes the same disposition of her property as was made by the will of her husband. Since the death of both husband and wife, the property has been kept together and managed by the executors, who are the testators' children, as trustees. The business as it was carried on during the lifetime of Jeremiah P. Robinson has been substantially conducted by the executors in the same manner, the son Jeremiah having its active management. The income of the estate, from August 31, 1892, to the same date in 1894, was, respectively, $119,-789.30, $117,007.89, $59,694.91; making a total income for that period of $296,492.10, and the net income $79,319.24. The average income during this time to which Mrs. Leonard was entitled is $6,609.93. From September 1, 1894, to July 1, 1895, the net income was $13,-190.39. The falling off of income since 1892 was due to the appropriation of a part to the completion of certain unfinished buildings, and making other improvements, and did not represent any loss or impairment of the estate, but added to its value, and will ultimately increase its productiveness. Mrs. Leonard's family consists of herself, her husband, an unmarried daughter and son. She has two married daughters, who live with her, and are supported by their husbands; but one daughter defendant has been accustomed to as-

sist to a limited extent. Neither the unmarried son nor daughter is self-supporting. Mrs. Leonard's husband is about 45 years of age, and is in sound bodily health. Since the death of Jeremiah P. Robinson, he has engaged in no business, and during this period has been entirely supported, clothed, and furnished by his wife, from her income, as a gentleman of leisure. Mr. and Mrs. Leonard and the unmarried daughter now live in a boarding house in West Fifty-Eighth street, in the city of New York, for which Mrs. Leonard pays $60 a week. The son receives $3 a week, and is fitting himself for business. During the lifetime of Mrs. Leonard's father, she lived for the greater part of the time at his home, and was supported by him, her expenditures being $10,000 or $12,000 a year. For about three years she kept house, the house being furnished by her father, and then she expended from $12,000 to $15,000 a year. The husband was then in business with the testator, and contributed something of this sum; what proportion does not appear. After she abandoned housekeeping, she returned to her father's house, before his death, where she lived as before, and continued therein until some time after her mother's death, drawing, after the latter event, $11,-000 a year. This sum was not entirely devoted to her individual use, but was expended in keeping up the house, an expensive establishment. The plaintiff is a judgment creditor of Mrs. Leonard's, and the basis for the judgment is the purchase price of clothing furnished for her personal use. The present action is in the nature of a creditors' bill to reach surplus income. The allegations of the bill are, among other things, that the income received from the trustees by Mrs. Leonard is more than sufficient to provide for her suitable support and maintenance, and that the surplus is properly applicable, in equity, to the payment of the judgment; and plaintiff asks, in her prayer for judgment, that the court determine how much of Mrs. Leonard's income is necessary for her suitable support and maintenance, and to direct judgment that the surplus of said income be applied to the satisfaction of plaintiff's judgment. The referee has tried the case carefully, and disposed of it intelligently, and we might safely rest on the learned opinion with which he maintains his conclusion; but defendant so fiercely assails it that we may contribute somewhat in answer thereto. The referee has found that $5,000 is an amount which will be sufficient to meet the expenses of Mrs. Leonard and of those members of her family naturally dependent upon her. Reference to his opinion shows that the basis of this conclusion is the sum of $2,080, for the board of herself and daughter, $1,000 for the maintenance of her son, leaving $1,920 for clothing for herself and daughter, and incidental expenses. It is therefore readily discerned that, in the opinion of the referee, the luxury of supporting and furnishing spending money for an able-bodied husband, in sound health, ought to be denied the wife, for the benefit of creditors who have furnished her with clothing.

The conclusion is first assailed upon the ground that there has never existed any basis of legal right to maintain this action. The defendant assigns as reason for this claim that it was necessary for plaintiff to show that a surplus income existed. To this we agree.

Examination of the argument of the learned counsel for Mrs. Leonard, however, shows that this is not precisely what he means; and, in the light of further statement, we learn that what is intended to be conveyed is that there must have been an accumulation of some income, and that, with the sum which might be received, must be beyond the needs of the cestui que trust before equity can lay hold of it.

The Revised Statutes provide:

"Where a trust is created to receive the rents and profits of lands, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum that may be necessary for the education and support of the person for whose benefit the trust is created, shall be liable, in equity, to the claims of the creditors of such person, in the same manner as other personal property, which cannot be reached by an execution at law." 4 Rev. St. (8th Ed.) p. 2438, § 57; Code Civ. Proc. § 1871.

Under this statute, which is authority for this action, we understand that the precise claim which is urged here was made and condemned in Williams v. Thorn, 70 N. Y. 270. And the court said, in answer thereto:

"I find no authority for this proposition except a single special term decision (Hann v. Van Voorhis, 15 Abb. Prac. [N. S.] 79); nor any reasonable ground upon which it can be sustained. It is only where the surplus is sought to be reached, as property of the debtor, or as a debt due from a third person, by supplementary proceedings, that such doctrine has been held; and, as has already been shown by the cases cited, these very cases concede that a different rule would prevail in a suit like the present one."

The court then reviews and condemns the case of Clute v. Bool, 8 Paige, 83, relied upon by defendant, reaching the conclusion that the decision was in violation of the express language of the statute, and further showing that the chancellor who wrote therein did not adhere to his own dictum when he came to the decision of Silleck v. Mason, 2 Barb. Ch. 79. In the Williams Case the allegation of the complaint was that the income of the estate was much greater than was necessary for defendant's support. Nothing appeared by it to show that there was any surplus of income in the hands of the trustee. And the decision, which was supported, provided, among other things, "that the surplus over and above such allowance (i. e. that provided in the judgment), whether accrued or hereafter to accrue, should be paid to the plaintiff," etc.

It is suggested that in fact, in this case, there was an accumulation of income when the action was commenced. If this be so, it is evident that the decision was not made to depend upon that fact; and, as the point was raised and condemned, it may be assumed that it did not so appear. Nothing that appears in the report of this case when again appealed (81 N. Y. 381) lends color to the claim. On the contrary, the sum there commanded to be paid over had all accrued subsequent to the commencement of the action. In this connection, it is interesting to note that the Hann Case, which, as we have seen, was condemned, as reported on appeal (5 Hun, 425), shows that no surplus of income was alleged to exist at the time when the suit was commenced. It was with great reluctance, and evidently with a clear conviction that the court was wrong, in Campbell v. Foster,

35 N. Y. 361, that the supreme court sustained the demurrer therein. The confusion which arose out of the decision in the Campbell Case has now been set right. In Kilroy v. Wood, 42 Hun, 636, Moulton v. De Ma Carty, 6 Rob. (N. Y.) 533, and Card v. Meinecke, 72 Hun, 299, 25 N. Y. Supp. 1119, there was a simple failure of proof to show that the income, not the amount on hand at any special time, was more than was necessary for the needs of the cestui que trust; and none of them are authority for the contention now urged. In Stow v. Chapin (Sup.) 4 N. Y. Supp. 496, nothing was before the court except the sufficiency of the papers upon which the injunction granted therein was based. The allegations were held insufficient, for the reason that there was no proof showing what would be a sufficient income for the defendant. There was no denial of the right to relief in a proper case, and the order provided for a future application upon sufficient papers. So far as the note of Mr. Abbott to the case of Tolles v. Wood (N. Y. App.) 16 Abb. N. C. 1, 29, 30 (1 N. E. 251), assumes that there must be surplus in the hands of the trustees before the action can be maintained, it is not in harmony with the decision in the Williams Case. Where the income has been paid, its source and amount explained, and its permanent basis established with certainty, an action to reach it is not premature, within the doctrine of any well-considered case. In this class of cases it is quite apparent that each must be largely determined upon its particular facts, aided by such general rules as precedent has established. It is quite true that, in determining the amount of income necessary in a given case, due regard must be had for the station in life, the social standing, and the accustomed manner of living, of the party, both before and since the income was provided. It is quite proper in some cases to allow for the retention of servants and the maintenance of an equipage, while in others no such considerations would be allowed. In Silleck v. Mason, supra, it was said:

"They should not, upon a fair construction of the statute on this subject, be permitted to indulge in extravagant expenditures while the defendant's creditors remain unpaid."

The proofs before the referee showed in detail about the method, style, and cost of living of Mrs. Leonard and her family before and since the death of her father. Her son is now 21 years of age, and the unmarried daughter 18. How the daughter lives is shown. Respecting the son, it is objected that there is no basis upon which the referee could fix the arbitrary sum of $1,000 per annum as sufficient for his support. It did appear what business he was engaged in, what he received, and where he lived. The referee was authorized upon this evidence to determine what was a fair sum for the support of this son, and, in arriving at this determination, he could exercise his judgment and knowledge upon such matters. In Silleck v. Mason, supra, the chancellor, upon appeal, exercised an independent judgment in reaching a like conclusion; and we think the referee here was authorized to fix the sum which he did. If we eliminate the support of the husband from the fixed charges upon Mrs. Leonard's income, the allowance made by the referee seeems ample to

meet all the reasonable expenditures which she is called upon to make for herself and those properly dependent upon her, making fair allowance for her method and style of living. Respecting her husband, the primary liability is upon him to support his wife and family. He is not to be considered as a mere useless ornament. When he is of sufficient ability to discharge his obligations, the law regards him as a disorderly person if he fail therein. Upon the proof here, he is shown to be able-bodied and in sound health. Therefore, he must be presumed able to discharge the obligation which he voluntarily assumed when he entered the marital relation. It would be a gross perversion of equitable rules to fasten the support of this husband as a fixed charge upon this income, and thereby turn an honest creditor away empty-handed. There is nothing in the will showing an intention on the part of the testator, when he provided the income, to make the husband an incumbrance thereon, and the wife may not do it at the expense of her creditors.

It follows from these views that the judgment was right, and should be affirmed, with costs. All concur.