### In re HUGHES.

(District Court, S. D. New York. December 2. 1910.)

1. BANKRUPTCY (§ 77*)—INVOLUNTARY PETITION — PETITIONING CREDITORS— AMOUNT OF CLAIM.

In involuntary bankruptcy proceedings it is not essential that the amount due the petitioning creditor be exactly determined, as long as it appears that the petitioners are creditors to an amount sufficient to satisfy the provisions of the act.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 77.*]

2. BANKRUPTCY (§ 57*)—ACTS OF BANKRUPTCY — FRAUDULENT CONVEYANCE— EVIDENCE.

Where, within four months prior to the filing of a bankruptcy petition, the alleged bankrupt had conveyed without consideration what seemed to be all of his property to his wife, and testified that he did so because of his fear that one of his creditors would institute suit against him for an amount larger than he thought was owing, proof of such facts, without other evidence that the alleged bankrupt was then insolvent, was sufficient to establish a prima facie case, entitling the petitioning creditors to an adjudication in bankruptcy, in the absence of proof by the alleged bankrupt that, exclusive of what he had conveyed, he was solvent when the petition was filed.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 57.*]

In Bankruptcy. In the matter of bankruptcy proceedings against Thomas Hughes. On motion to confirm the report of a referee and master directing the dismissal of an involuntary petition against the alleged bankrupt. Motion denied, and adjudication ordered.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Mr. White, for bankrupt.
Mr. Syme, for petitioning creditors.

HOUGH, District Judge. As to the exact amounts due the petitioning creditors no opinion is expressed. It is enough that they have shown, and the master has found (without objection), that they are creditors, and to an extent sufficient to satisfy the act. If, when their claims are allowed for purposes of dividends, such allowance is not satisfactory, the question of amount will come up on petition to review. On this motion the inquiry is only as to the propriety of refusing adjudication and dismissing petition.

Within four months of petition filed, Hughes conveyed, without consideration and to his wife, what seems to have been all his property. Let it be assumed that just before conveyance he was not insolvent; that is, that all his property at a fair valuation was more than enough to discharge all his debts. The wife has not testified in this matter; but Hughes, when asked why he transferred the real estate to Mrs. Hughes, said:

"The only reason is—why I did it, was that the Zeltner Brewing Company —and the way Hobby was worrying me, I thought that I would transfer it to my wife, and have her to sell the property and put the money in safekeeping, and see what we could get to pay our debts that I owed to anybody; and so I would have a clear mind."

His own counsel then suggested:

"So that your idea was to make a transfer to her, so that she might sell the property and pay everybody whom you owed?"

And Hughes answered:

"That was the idea exactly."

The member of the bar who supervised the conveyance was asked whether the husband and wife at the time of the conveyance were "very much depressed over the condition of affairs." He answered:

"They were very much afraid of the courts and lawsuits. Not being used to legal affairs, they wanted to straighten out the thing as well as they could."

And the same witness was permitted to put on record his belief that the conveyance in question—

"was made principally on account of the fear of Mr. and Mrs. Hughes on account of a lawsuit, and that they thought Mr. Hughes might be punished in a way if he still owned this property."

Hobby was the representative of the Zeltner Brewing Company, and that corporation is the principal petitioning creditor here, and was at the time of the conveyance in question a considerable creditor, and a very insistent one. Hughes did not believe that he owed the brewing company as much money as was claimed, and in this he has been largely, if not wholly, sustained by the referee, a result confirmatory of the evidence above quoted.

The bankrupt is obviously a man of little education and probably small intelligence; but for the benefit of the business community generally he must be and is presumed to know what the rights of cred-

itors are, and his own statement of the occurrence amounts therefore
to this: That he was afraid that some of his creditors might get more
than he thought they were entitled to, and subject him to unwarrant-
able expense, if he remained the record owner of his own property,
and therefore he conveyed it to his wife, so that she might sell it and
pay debts, rather according to their own ideas of justice than in ac-
cordance with the views they ascribed to the creditors who were push-
ing them.

The question, therefore, is whether this was a conveyance "with in-
tent to hinder, delay, *or* defraud" creditors, or any of them. The
statute is in the disjunctive, and while it may be admitted, and is I
think true, that the words "hinder" and "delay" are synonymous
(Read v. Worthington, 9 Bosw. [N. Y.] 628), it is not necessary, on the
language of the statute itself, that any intent to defraud should be
present. It is enough if any creditor is intentionally to be hindered
or delayed. If the intent to hinder and delay exists, a conveyance
made by an embarrassed debtor with a view, known to the purchaser,
of securing the conveyed property from attachment, is voidable as
against creditors, even though it be honestly made, and the debtor in-
tends, as Hughes says he did, that all creditors should be paid in full.
Kimball v. Thompson, 4 Cush. (Mass.) 446, 50 Am. Dec. 799. This
must necessarily be the correct view upon any consideration of lan-
guage which traces its origin to the statute of Elizabeth; for a debtor's
property is in legal theory subject to immediate process at the instance
of any creditor, and a debtor will not be permitted to hinder or delay
any creditor by any device which leaves his property, or the avails of
it, subject to his control and disposition; and it makes no difference
that the debtor intends to apply the avails of the same to the payment
of his debts. It still remains true that he has hindered his debtors from
applying the property in the way that they have a legal right to rely
upon.

To be sure, at common law the debtor may prefer whom he pleases,
and he may execute a conveyance of even all his property, for a pres-
ent or antecedent consideration; but a conveyance as in this case with-
out any consideration can have no other purpose than that of hindrance
and delay, and if it has that purpose, even though no fraudulent in-
tention is proven or suspected, it is enough to render it obnoxious to
many statutes, and among others to the bankruptcy act of 1898 (Act
July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]).

Such an act of bankruptcy as this a man may commit without being
insolvent. Yet the right of petitioning creditors to an adjudication is
only made out prima facie, when it is shown that within four months
a solvent debtor has conveyed his property with intent to hinder or
delay creditors. For that debtor may come in and prove as matter of
fact (the burden being upon him so to do) that, when the petition was
filed, he was, notwithstanding the conveyance aforesaid, solvent. This
follows from a consideration of section 3c making solvency a defense
to the act of bankruptcy defined in section 3a (1), in conjunction with
section 1, subd. 15, which defines "insolvency," and expressly excludes
from the consideration of the property which must render him solvent

anything which "he may have conveyed, transferred, etc., * * * with intent to defraud, hinder, or delay his creditors."

When this petition was filed Hughes had conveyed substantially all his property. He had conveyed it with intent to hinder and delay particularly the Zeltner Brewing Company. He says so himself. Shortly after said conveyance, the petition in bankruptcy was filed; and the question is, Was he then solvent, excluding from consideration that which he had so conveyed? Obviously he was not, and it is no answer to this position to assert that the equitable title to the property conveyed remained always in Hughes. It is the most extreme case of a conveyance in fraud of the statute of Elizabeth, when the transferee is but the alter ego of, or cover for, the transferror. The transferee may be, and in this case is, but a mere trustee for the transferror, yet nevertheless there was a conveyance, and an infraction of the statutes descended from the famous enactment of Elizabeth does not depend upon the nature of the title resulting from the prohibited transfer, but upon the intent with which such prohibited transfer was made. The intent being established, everything else follows.

It is therefore to me obvious that Hughes first made a conveyance in defiance of the act, within four months a petition was filed against him, and now he must submit to bankruptcy, unless he can show that, exclusive of what he conveyed to his wife, he was solvent when the petition was filed. This he has not done and cannot do.

Adjudication ordered.