## In re CONDON.

### (District Court, S. D. New York. August 2, 1912.)

**1.** BANKRUPTCY (§ 396*)—ACTS OF BANKRUPTCY—TRANSFER WITH INTENT TO HINDER AND DELAY CREDITORS—"FAMILY."

An adult son, for whose support his father is not legally liable, and who does not reside with his father, is not a member of his father's "family," within the meaning of Code Civ. Proc. N. Y. §§ 1879, 2463, which exempt the earnings of a debtor for 60 days, where they are "necessary for the use of a family wholly or partly supported by his labor"; and the payment by a father from his earnings to a son living separate from him of $600, when the father was in fact insolvent, and knew such fact, or at least that his solvency was doubtful, was a transfer with intent to hinder or delay creditors, which constituted an act of bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 3a (1), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–668, 670; Dec. Dig. § 396.*

For other definitions, see Words and Phrases, vol. 3, pp. 2673–2691; vol. 8, p. 7661.]

**2.** BANKRUPTCY (§ 396*)—ACTS OF BANKRUPTCY—TRANSFER WITH INTENT TO PREFER.

A statute exempting the earnings of a debtor necessary for the support of his family does not authorize an insolvent to use earnings for the payment of bills for supplies previously furnished; and such a payment, if made with knowledge of his insolvency, or that his solvency was doubtful, constitutes a preference, and an act of bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 3a (2), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–668, 670; Dec. Dig. § 396.*]

**3.** BANKRUPTCY (§ 396*)—ACTS OF BANKRUPTCY—TRANSFER WITH INTENT TO HINDER AND DELAY CREDITORS.

An insolvent, who, although entitled under the exemption laws of the state to use his earnings so far as necessary for the support of his family, with knowledge of his insolvency, or that his solvency was doubtful, furnished his family with $1,600 for a month's use, committed an act of bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 3a (1), 30 Stat. 546 (U. S. Comp. St. 1901. p. 3422), by transferring property with intent to hinder or delay his creditors; and it is immaterial that he may have thought the payment warranted by the statute.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–668, 670; Dec. Dig. § 396.*]

In the matter of Martin J. Condon, alleged bankrupt. Hearing on petition. Petition sustained, and adjudication ordered. See, also, 198 Fed. 480.

Tompkins McIlvaine, for petitioner.
Ernest A. Cardozo, for Louis G. Hart.
Ferdinand E. M. Bullowa, for Savoy Trust Co.
Henry G. K. Heath, for alleged bankrupt.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HAND, District Judge. I think it quite clear that the earnings of the respondent were exempt to the extent necessary for the use of his family, wholly or partly supported by his labor. Code Civ. Proc. N. Y. §§ 1879, 2463. It must be remembered that these earnings were at the time, in a bank account, and therefore were not, under the New York law, subject to execution. Carroll v. Cone, 40 Barb. (N. Y.) 220, said in Baker v. Kenworthy, 41 N. Y. 216, to have been affirmed by the Court of Appeals; Meagher v. Campbell, 12 Misc. Rep. 426, 33 N. Y. Supp. 700; Duffy v. Dawson, 2 Misc. Rep. 401, 21 N. Y. Supp. 978. It could be reached only by creditors' bill (sections 1871–1879) or by its more summary substitute (Lynch v. Johnson, 48 N. Y. at page 33), "proceedings supplementary to execution" (Code Civ. Proc. §§ 2432–2471). Earnings within 60 days are specifically made exempt from such proceedings, to the extent mentioned. Moreover, the debtor is, not compelled to wait until the proper amount is set off to him, but may use it as he thinks best, at the peril of being found later to have used more than he should. Hancock v. Sears, 93 N. Y. 79. There can be no doubt that, under the law of New York, the respondent could take so much of his earnings as was in his bank account, and as was necessary to his family's support, and use it for that purpose. It will not be necessary, therefore, to determine whether, if those earnings had ever got into the form in which they were subject to levy by execution, they would have remained exempt.

[1] The first question is whether the sum of $600 paid to his adult son was necessary for the use of his "family." I can find very little law in New York upon the subject of who is a man's "family" under these provisions. Quite clearly an adult son, though incapable of self-support, has no right to his parents' support. Such duties as exist are the same as those prescribed by the statutes of 23 Eliz. and 5 Geo. I (2 Kent's Comm. star pages 190, 191; In re St. Lawrence State Hospital, 13 App. Div. 436, 43 N. Y. Supp. 608), which provisions are at present in section 914 of the Code of Criminal Procedure. These duties only require a parent to support an adult child in the way which the overseers of the poor may require, and that obviously has no application to an allowance of the size which the respondent was making to his son.

However, it does not, of course, necessarily follow that an adult son may not be a member of the "family," because the father owed him no legal duty of support. There are cases in other states which hold that a legal duty to support others is not essential to make them members of the "family" of the debtor under such statutes; but in all these cases they were living under one roof. Rolator v. King, 13 Okl. 37, 73 Pac. 291; Tyson v. Reynolds, 52 Iowa, 431, 3 N. W. 469; Barry v. Hale, 2 Tex. Civ. App. 668, 21 S. W. 783; Bell v. Keach 80 Ky. 42 (obiter). It is not necessary that this should be the case, where a legal duty exists to support the dependents; but I can find no case where there was neither legal duty nor communal living. In New York there seems to be no construction of

the term, unless it be Blake v. Bolte, 30 N. Y. Supp. 209,[1] where the term was held to be coextensive with legal duty; but that case on appeal (10 Misc. Rep. 333, 31 N. Y. Supp. 124) was affirmed upon another theory. Van Vechten v. Hall, 14 How. Prac. (N. Y.) 436, is hardly an authority either way. In Fink v. Fraenkle, 20 Civ. Proc. R. (N. Y.) 402, 14 N. Y. Supp. 140, the court defined a household as "a family living together." It is not necessary here to decide more than that, when neither duty nor communal living exists, there is no family within the meaning of the New York law. Certainly it seems quite clear that a man's creditors may not be held off indefinitely, while he supports adult children who have left his roof and are maintaining separate households.

[2] As to the payment of the Altman bill, the same result follows, because so much of the earnings were not necessary to the family's future support, even if the goods themselves had been. The purpose of the statute, like all such provisions, is to provide for the future. They are designed to prevent the debtor's family from being entirely destitute, until by his earnings he may again get upon his feet. They cannot by any stretch of intention be held to cover the payment of bills already incurred, and the best proof that money taken by the respondent was not necessary to his family's support is that he did not apply it to that purpose. It is commendable enough to want to pay one's debts; but when the debtor selects favorite creditors, whether they be tradesmen or banks, he preferred those he pays, and that he may not do. So far as authority exists, it concurs with this conclusion. Gillett v. Hilton, 11 Civ. Proc. R. (N. Y.) 108.

[3] Next, as to the payment to Mrs. Condon, it is quite apparent that it in fact exceeded the necessities of the family, because part of it she gave away upon charitable uses, and over half, she very honestly turned back to the receiver. Surely a debtor may not put generosity to the church ahead of his obligation to his creditors, nor may he give away a round sum to make sure that there may be enough for liberal living meanwhile. Furthermore—and this applies as well to the payment to the son—when a man is in debt he may not provide an allowance to himself of $12,000 per year and to his son of $5,000. In case of allowance out of spendthrift trusts, the rule has undoubtedly been liberal, giving the debtor what he was used to. Kilroy v. Wood, 42 Hun (N. Y.) 636; Howard v. Leonard, 3 App. Div. 277, 38 N. Y. Supp. 363; Bunnell v. Gardner, 4 App. Div. 321, 38 N. Y. Supp. 569. But those are quite different cases from this, where the property is the debtor's own, and even in the case of trusts, as against the settlor, the whole income is subject to creditors' claims (Schenck v. Barnes, 156 N. Y. 316, 50 N. E. 967, 41 L. R. A. 395), though the statute (1 R. S. p. 729, § 57) is the same. That case shows that although a third person, when he bequeaths an income to another, may prevent his creditors from taking any part of what is necessary to support him as he has been used to live, yet out of his own estate he may not keep back the same

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 9 Misc. Rep. 714.

amount. A man must consent to live in niggardly fashion if he leaves his debts unpaid, and the hardship which it involves is one of the considerations he must weigh when he incurs the debts. There are few greater scandals in the law than for a man to live handsomely while his creditors get nothing. If he would discharge his debts, let him go through bankruptcy. That is what the law allows. But to continue to withhold from existing creditors enough to live in a way which to 19 men out of 20 seems not only great comfort, but incredible luxury, is intolerable in a community which professes, at least, not to recognize social classes. Even had the respondent actually used in living what he withdrew, I should therefore, in the absence of controlling authority, be unwilling to agree that the sum of $1,600 was necessary for the use of his family for the ensuing month; that is, until the next installment of salary should come due, out of which he might again reserve what was necessary.

I conclude, therefore, that the payments to Altman, to the son, and to Mrs. Condon were either preferential payments, or transfers which in fact did hinder the respondent's creditors, and the remaining question is only of the intent. As to the transfers as distinct from the preference, there is no dispute that the respondent knew that the property so transferred and the money so paid was his own, and that he intended to put it beyond the powers of his creditors to reach. That would in most cases leave nothing open to controversy; but here it is urged that he had no intent, because he had taken legal advice which assured him of his right to do what he did. It is, of course, well settled that there must be proof in some form of an actual intent, as distinct from the knowledge of the facts from which the consequences of the debtor's act will arise. Coder v. Artz, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008. That means only this: That although, in general, civil responsibility is imputed to a man for the usual results of his conduct, regardless of whether in the instance under consideration he actually had those consequences in mind, in specific cases like this, the law requires proof of that added element, his mental apprehension of those consequences, before it attaches to his conduct the result in question. This is such a case; but the fraudulent intent which the law requires need not necessarily involve moral obliquity. The ancient phrase "to hinder, delay, or defraud," has always been in the disjunctive, and an intent to hinder or delay is adequate even if it be not an intent to defraud. Nicholson v. Leavitt, 6 N. Y. 510, 57 Am. Dec. 499; McConnell v. Sherwood, 84 N. Y. 522, 38 Am. Rep. 537; Dearing v. McKinnon Dash & Hardware Co., 165 N. Y. 78, 58 N. E. 773, 80 Am. St. Rep. 708; Buell v. Rope, 6 App. Div. 113, 39 N. Y. Supp. 475; Warner v. Lake, 14 N. Y. Supp. 10; [2] In re Hughes (D. C.) 183 Fed. 872; In re Elletson Co. (D. C.) 174 Fed. 859.

Certainly Mr. Justice Day, in Coder v. Artz, supra, meant only to insist upon the necessity of proof of the statutory intent, as gen-

[2] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 59 Hun, 628.

erally required under the statute of Elizabeth, and not to make a new rule that proof of an intent to hinder or delay, as distinct from proof to defraud, was insufficient. He had before him a case where the court below had found that there was no intent to hinder, delay, or defraud, and he was contrasting the need of some such proof with the absence of such need to upset a preference. The statutory intent under this statute has always been referred to as "fraudulent"; but as I have shown—and there are many more authorities—proof of a specific intent to hinder or delay has always been held enough.

Now here the respondent intended to hinder and delay his creditors, for that was the very purpose of his acts. He thought he had the right to do so, because he thought that the whole of the property was exempt. That was a mistake as to the extent of his rights, and I suppose it answers the claim that he intended to defraud them, for common usage would limit the word "fraud" to some act which was directed to depriving another of what the actor knew to be his rights. However, it would be a wholly new rule that a conveyance intended to prevent creditors from pursuing their legal remedies was not within the statute, because the debtor supposed he could do it. The case is no exception to the rule that the ignorance of the consequences in law of one's conduct has no effect upon the results which the law attaches to it. The respondent intended the transfers to accomplish what they did accomplish, and the inquiry is irrelevant whether he supposed that the law would permit it to be done. The master was, therefore, quite right in disregarding his own finding of no immoral conduct.

It is, therefore, unnecessary to consider the law as laid down in New York, under which a voluntary conveyance by an insolvent, or by one who becomes such through the conveyance, is absolute proof of the statutory intent. Erickson v. Quinn, 47 N. Y. 410; Coleman v. Burr, 93 N. Y. 17, 45 Am. Rep. 160; Cole v. Tyler, 65 N. Y. 74; Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082. If the suit were to set aside a transfer, the New York law would apply (Knapp v. Milwaukee Trust Co., 216 U. S. 545, 30 Sup. Ct. 412, 54 L. Ed. 610), even though no actual fraud was shown. I do not suppose that the same words in section 3 (1) are to have a different interpretation from what they have in section 67e, or that that conveyance would not be an act of bankruptcy which would be voidable by a trustee. Such an interpretation would, of course, violate the whole theory of bankruptcy, which designs to put into this court the administration of the insolvent estate as soon as the bankrupt has made a transfer which his creditors could unravel, and the proceeds of which they could apply to their debts in the state courts. It would contradict the theory of bankruptcy that assets which formerly went to the more active should be administered for the equal advantage of all. That cannot be the law.

As to the preference, there is perhaps more doubt; for the master has not found that the respondent knew he was insolvent, deeming that fact immaterial. He certainly knew that his solvency was doubtful prior to April 5th; but he says he thought that, unless wasted, his

assets would be adequate. Now, it is certainly true that the petitioners must show that the respondent intended to give Altman & Co. more than other creditors would get. That element is not met by showing that he ought to have thought so. However, if he considered the issue doubtful, he considered that there was a chance that what he did would have that result, and nothing can save that from being a preference, except a bona fide belief that, in spite of temporary embarrassment, he would carry the day. It is quite clear that, though the respondent hoped, yet he knew the result was very doubtful, and that he did not make the payment in the effort to carry through his affairs successfully. I do think that, with a full knowledge of the dubiety of his affairs, he may merely select some creditors to prefer, putting the rest to the chance, as he knows it, that he will pull through. Had the creditors known of his doubtful condition, they would under all the authorities, be held chargeable with the facts. His position cannot be better than theirs.

Upon the remaining questions of the amendment of the petition and the status of Brewster as petitioning creditor, the questions raised are irrelevant, because these three acts of bankruptcy occurred within four months of the amendment and of the intervention of Winter Russell.

The size of the payment and of the two transfers is quite ample to allow them to serve as acts of bankruptcy. Size cannot be a material consideration, except in so far as it touches the question of intent; but, if it were, the only cases which suggest size as determinative do so when the payments are trivial. Here the total is $1,800. Certainly there can be no question that this is a large enough sum to justify action.

The respondent was unquestionably insolvent at the end of March. The contrary is barely suggested. As to the transfers, the burden of proof of solvency was in any case on him. As to the preference, the question was in any case one of fact, which the master has considered most carefully and fully, and nothing is suggested to justify me in disturbing his finding.

Report confirmed, and adjudication ordered.