In re DE NOMME.

(District Court, D. Rhode Island.  May 27, 1914.)

No. 1234.

BANKRUPTCY (§ 407*)—DISCHARGE—OBJECTIONS—TRANSFER TO DEFRAUD CREDITORS—BULK SALES LAW.

Where a bankrupt, within four months prior to the filing of a petition in bankruptcy, transferred a stock of merchandise within the Bulk Sales Act (Pub. Laws R. I. 1909, c. 387), without complying with the provisions of such act, requiring five days' previous notice to every creditor disclosed in a required list, and to avoid making such list he made an affidavit that he had no creditors in connection with his dry goods business, which was false, as well known by him when made, such facts were sufficient to sustain an objection to his discharge on the ground that within four months he had transferred his property with intent to defraud creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

In Bankruptcy.  In the matter of bankruptcy proceedings of Henry De Nomme.  Petition for discharge denied.

Quinn & Kernan, of Providence, R. I., for petitioners.

Alfred S. & Arthur P. Johnson, of Providence, R. I., for objecting creditor.

Mendell W. Crane, of Providence, R. I., for bankrupt.

BROWN, District Judge.  The bankrupt's discharge is opposed on the ground that within four months preceding the filing of the petition the bankrupt, on February 17, 1913, transferred a stock of merchandise with intent to hinder, delay, and defraud his creditors.  The transfer is proved by a bill of sale.  As this was a sale in bulk, the provisions of the Bulk Sales Act of April 14, 1909 (Public Laws of Rhode Island, c. 387), were applicable.

Contemporaneously with the execution of the bill of sale, the bankrupt made affidavit that he had no creditors in connection with his dry goods business.  The bankrupt was then insolvent and had a large number of creditors, and the oath was false, as the bankrupt well knew.

The purpose of this oath was manifestly to avoid giving to the transferee a written list of the names and addresses of the creditors of the transferror, and to obviate the requirement of the statute that:

"The transferee shall, at least five days before such transfer, notify personally, or by registered mail, every creditor whose name and address are stated in said list of the proposed transfer."

A similar statute was before the Supreme Court of Massachusetts in J. P. Squire & Co. v. Tellier, 185 Mass. 18, 69 N. E. 312, 102 Am. St. Rep. 322.  The opinion by Knowlton, C. J., says that:

"The purpose of the Legislature evidently was to provide for creditors protection against a class of sales which are frequently fraudulent, and which leave creditors with no means of collecting that which they ought to receive.

* * * In substance, it declares that a sale of this kind shall not be made without first giving to creditors an opportunity to collect their debts, so far as the property to be sold might enable them to collect, or subsequently making satisfactory provision for the payment of these debts. * * * If he [the vendor] is unable or unwilling to pay his debts, it puts a substantial obstacle in his way when he wants to dispose of his stock of merchandise in bulk and to receive payment for himself. But, under such circumstances, the property in most cases ought not to be sold in bulk without first giving creditors an opportunity to consider what ought to be done with it."

The Rhode Island statute, therefore, gives to creditors the right to a reasonable notice of sales of this class, and an opportunity to secure their debts by attachment or by a petition in bankruptcy. The failure of the bankrupt to comply with the provisions of this act was fraudulent as to creditors, even though it might be held that the title of the vendee, under the special circumstances, was not assailable.

It is urged for the bankrupt that a mere constructive fraud is not sufficient to prevent a discharge; but the case before me is of actual fraud, and not of constructive fraud. The false oath defrauded the creditors of notice and of the opportunity to protect their rights afforded by the statute.

Without a violation of the statute the bankrupt could not have secured the funds to make preferential payments. While a preferential payment, in the absence of such a statute, is not a fraud, yet, where the creditors are deprived by the false oath of the bankrupt of the notice which will enable them to prevent a preference, they are, in my opinion, actually defrauded by a preferential payment from funds procured by the bankrupt through a sale in violation of the statute.

In view of the new rights given to creditors under the act, he has, in my opinion, not only hindered and delayed his creditors by preventing their exercise of legal rights (see In re Hughes, 25 Am. Bankr. Rep. 556, 183 Fed. 872), but has defrauded them of the amount to which they would have been entitled upon a distribution of the estate without preferential payments.

It was the purpose of the statute to prevent a familiar method of defrauding creditors, which usually included, not only a sale in bulk, but a claim that the proceeds had been applied to pay the notes of relatives or other preferred creditors. We cannot permit a bankrupt to repeal this act by a false oath that he has no creditors.

Furthermore, the bankrupt admits that of the proceeds of the sale he appropriated the sum of $200 for his own use. He contends that the balance was used in the payment of preferred creditors. Upon the evidence, however, I am not satisfied that the entire balance was applied to the payment of bona fide creditors.

The specification of objection is, in my opinion, sustained, and the discharge is denied.