In the Matter of Erma Cazier PETERS, aka Marie Peters (formerly doing business as Marie Antoinette Professional Cosmetics), Voluntary Bankrupt.

No. B 725–66.

United States District Court
D. Utah,
Central Division.

April 13, 1967.

Grant Macfarlane, Salt Lake City, Utah, for bankrupt.

Mary C. Lehmer, Salt Lake City, Utah, pro se.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge.

Mary C. Lehmer, one of the creditors of the above-named bankrupt, filed timely objections to the discharge of the bankrupt. The Referee in Bankruptcy disqualified himself from hearing and ruling upon these objections in the first instance and accordingly a hearing on them was had before me. Evidence was taken including testimony from both the bankrupt and the objector. Briefs have been filed by the respective parties and the court considers itself fully advised.

One of the grounds for objection was that the bankrupt allegedly had violated 11 U.S.C. § 32(c) (2) in failing to keep or preserve books of account or records from which her financial condition and business transactions might be ascertained. I find that the objector has not sustained her burden of proof as to this ground but that on the contrary while the bankrupt's records were kept informally and imperfectly they were not fatally inappropriate or inadequate under the circumstances and there were no failures relating to their preservation which in and of themselves would justify denial of discharge.

The objector made the further separate claim that the bankrupt has vio-

lated 11 U.S.C. § 32(c) (7) by failing to give a satisfactory explanation of the $3500 received as consideration for the sale of her business to which more particular reference will be made hereafter. If by this assignment it is meant to claim that the bankrupt has failed to reasonably furnish information concerning the disposition of the proceeds of this sale, I think this ground for a denial of discharge has not been established. The manner and purpose of the dispersal of the funds were reasonably explained although precise records were not kept.

The only substantial ground for objection is denominated ground 1 in the original objections and was amended as such to conform to proof at the trial. This objection as so amended reads:

"1. Violated 11 U.S.C.A. 32 [c] (4), in that subsequent to the 1st day of the 12 months immediately preceding the filing of her petition in bankruptcy, to wit, on or about Dec. 17, 1965, she sold, transferred and assigned all of her property in Marie Antoinette Professional Cosmetics, including her alter ego company, Beauty Aid Distributors, with intent to hinder, delay or defraud her creditors, by sale on said date to Sam Logan Jr., dba Ramada Beauty Salon, of her trademark, 'Marie Antoinette', her goodwill therein, her furniture, fixtures, formulas and laboratory connections for $2,500.00, and her entire stock of inventory for $1,000.00, all in violation of the Bulk Sales and Fraudulent Conveyances Act then in effect in the State of Utah, particularly Sections 25-1-8, 25-2-1 and 25-2-2, Utah Code Annotated 1953 as amended, by failing to provide said buyer with a Bulk Sales Affidavit in the manner and form required by Sec. 25-2-1, UCA 1953 aforesaid, and by said bankrupt knowingly, fraudulently and willfully omitting from an insufficient and improper Bulk Sales Affidavit supplied to said buyer the names, addresses and indebtedness of all of her creditors, particularly the name, address and indebtedness of this objector, who was a general and business creditor of said bankrupt at the time of said sale, all in violation of the Bulk Sales and Fraudulent Conveyances Act of Utah aforesaid, whereby said buyer failed to notify at least 5 days prior to such purchase, bankrupt's creditors, and failed to cause such $3,500.00 purchase money to be applied ratably, except as to priorities provided by law, to the payment of the bona fide claims of bankrupt's creditors, whereby said bankrupt did delay, hinder and defraud this objecting creditor and other creditors of bankrupt and put her assets beyond their reach."

With the qualifications hereinafter noted I find this assignment substantially borne out by the preponderance of the evidence. Although the general rule is to the contrary, Anno. 84 A.L.R. 1406, I accept the bankrupt's testimony that she understood that the creditors to be listed pursuant to the Sales of Merchandise in Bulk Act of the State of Utah were business creditors. Assuming this, however, it was clear from the bankrupt's testimony that she was advised and clearly understood that all business creditors should be listed in the affidavit filed pursuant to the Act. On the question of whether the objector was in fact a business creditor, the testimony of the objector and the bankrupt is in sharp conflict.

The objector testified to facts which if accepted would not only establish clearly that she was a business creditor, but also that the bankrupt could have been under no possible misunderstanding on the point. The purpose of the request for the loan and the loan itself, together with all of the other circumstances related by the objector, were related to the bankrupt's business, and the evidence rather clearly demonstrated circumstantially that the funds were used primarily in the business.

As opposed to the testimony of the objector, the bankrupt generally asserted that the objector was not a business creditor. Her testimony was far from convincing in this respect however. On the other hand, the circumstances giving rise

to the indebtedness to which she testified failed to supply any reasonable explanation for the loan in question except in reference to its business necessity.

I am of the opinion, therefore, and so find, that the preponderance of the evidence establishes that the debt which the bankrupt owed to the objector prior to and at the time of the sale of her businesses and the execution of the affidavit under the Sales in Bulk Act was, and was known to her to be, a business debt incurred for and in connection with the very business that she was selling, and that her affidavit that there were no creditors other than those listed was false and made for the purpose of hindering and delaying her creditors and particularly the objector whose claim was not mentioned in the affidavit and who was thereby deprived of the opportunity of recourse to the sales price of the property pursuant to the Act. The effect of the false affidavit in fact was to transfer, remove and conceal the bankrupt's property in fraud of creditors, including the objector. This was not merely a constructive or a general intent on the part of the bankrupt, for she admittedly knew that business debts at least should be included, even though we accept her idea that non-business debts did not need to be or that she understood that they did not need to be.

■ The bankrupt was aware not only that she should have included among her listed creditors all business creditors but that the objector was a business creditor, for she personally had participated in the arrangements for the loan for business purposes and had utilized at least a substantial part of the loan therefor. I can see no escape from the conclusion that her failure was a specifically intended, knowing and considered one. She must have known that if she had listed the objector among the creditors she might not have access to any substantial part of the purchase price for her own personal requirements and desires. The evidence shows that she did in fact devote the larger part of the purchase price to her own purposes and did not utilize that part in paying off other creditors. Hence, there is more than a mere preference involved. On the contrary, there was a diversion of a substantial part of the purchase price from existing creditors with the exception of one or two to which she paid a portion of the purchase price.

■ Against the result which the foregoing facts seem to require, counsel for the bankrupt in the first place contends that an action now pending in the state court precludes the determination by this court until that action is concluded whether the bankrupt intended to defraud her creditors. It is asserted that on the 28th day of September, 1966, the objector commenced an action in the Third Judicial District Court in and for Salt Lake County (Civil action no. 167468), against Sam Logan, the assignee of the bankrupt, to set aside the sale of December 17, 1965, on the grounds that said sale was fraudulent and void, being in violation of Section 25–2–1 and 25–2–2 Utah Code Annotated 1953 as amended, and that this action is still pending. In re Davis, 28 F.2d 883 (D.C. Mass.1928), reversed on other grounds, Davis v. Jacobs, 35 F.2d 936 (1st Cir. 1929), is cited in support of the proposition that a court in hearing objections to a bankrupt's discharge could not determine whether an assignment was made with intent to hinder, delay or defraud creditors where the litigation over the assignment was still pending between the assignee and the trustee in bankruptcy. The situation there was essentially different than the situation with which we are faced. In *Davis* the question of the intent of the bankrupt with reference to the specific subject matter was pending before the same court in a suit brought by the trustee in bankruptcy, and intent would have been controlling in both cases. Obviously the referee was not in a position to pass upon the particular matter before the district court until that court had ruled.

■ Here, however, the state suit against the purchaser to set aside the sale as fraudulent by reason of the insufficient affidavit involves problems essen-

tially different than, and in addition to, the issue before this court. There, even though creditors were intentionally left out of the affidavit under the Sales in Bulk Act, the sale may not necessarily be set aside. As demonstrated in other cases cited in the brief of the counsel for the bankrupt, property may not be recovered from the possession of a purchaser even though the affidavit has not listed all of the creditors. The purchaser is required by the Utah statute to demand the prescribed affidavit, and if he does so the sale is not necessarily fraudulent even though, unknown to the purchaser, the affidavit fails to list every creditor.

■ Utah's statute, 25–2–1, 25–2–2, Utah Code Annotated 1953, as amended, does not declare the sale void merely because the list of creditors furnished by the vendor under oath is not full, accurate and complete. But whether the sale can or cannot be set aside does not conclude the problem of whether the bankrupt should be denied discharge for a false affidavit intended to hinder and delay creditors and having the effect of diverting funds which should have been available to them. Moreover, if a discharge in bankruptcy should be granted here over the objection of the creditor suing in the state court action, the latter action would likely become moot, since the plaintiff would have lost her status as a creditor. On the other hand, it is the duty of this court to rule upon the matters before it under its power as a court of bankruptcy and its power and obligation may not be frustrated by the pending state action.

Counsel for the bankrupt cites a number of cases establishing that in order to bar discharge the intent to hinder, delay or defraud creditors must be specific and not merely constructive and that the mere act of transfer or prefer-

ence is insufficient to bar discharge. It is further pointed out that mere violations of bulk sales acts do not in and of themselves establish the requisite intent. This is freely granted, but the facts here do not involve a mere preference of some creditors over others but on the contrary involve a specific intent to hinder and delay by means of a false affidavit as hereinabove found. Cases cited to the effect that even though an affidavit under the Sales in Bulk Act is incomplete or false the purchaser takes a good title, since the Act does not invalidate the sale but only acts as against the seller, are not in point. The criticism of In re De Nomme, 214 F. 671 (D.C.R.I.1914), contained in the later Rhode Island cases cited by the bankrupt is valid only as an interpretation of peculiar Rhode Island law out of context with the bankruptcy problem. In re De Nomme, in my judgment, is sound in the bankruptcy context. Even though the principle were not therein established, the facts here clearly call for the withholding of a discharge in application of the terms and spirit of the Bankruptcy Act itself.

■■ The objector has the burden of proof. In view of the beneficent and liberal purposes of the Bankruptcy Act discharge should not be withheld except for weighty reasons. On the other hand, the right to a discharge is a statutory privilege which should not be granted in defiance of statutory limitations and conditions. In re Solari Furs, 263 F.Supp. 658 (D.C.Mo.1967).

On the basis of the foregoing findings and conclusions I am of the opinion that the discharge in this case should be denied. Counsel for the objector is directed to prepare an appropriate order to this effect, submit it to opposing counsel for consideration of approval as to form and then to lodge it with the court.